Jos. Baugher and Jeremiah Fisher, surviving partners of Chas. Allwine, vs. Mary Wilkins and Jos. Wilkins, Jr., surviving Executors of Jos. Wilkins.

A lessee under one who has the fee in the demised premises, is entitled to the quiet enjoyment of them during *his term*, and there is an *implied* covenant to that effect, on the part of the lessor, where none is expressed, if the contrary be not stated.

But this implication does not extend to indemnity against injury or disturbance from the acts of a mere trespasser; it is confined to the acts of the lessor, and all claiming through or under, or in trust for him, and those of persons having lawful title.

An agreement authorising a *party-wall* to be *raised* and *continued* in a straight line with the present division wall, does *not give any permission or privilege* either to *pull down* such party-wall or to diminish the area of the adjoining building.

For injuries resulting to the tenants of the adjoining building from pulling down such a wall and diminishing their possessions, their remedy is against the person who did these acts, and not against their landlords who entered into such an agreement with that person.

Where parties are sued *as executors* but are not liable *as such*, still, if they have done the wrong complained of, they are liable in their *individual capacities*, and judgment may be given against them in such *capacities*, though the declaration is against them as *executors only.*

If an instruction be granted by *consent*, that consent makes the instruction the law of the case when brought before the appellate court on appeal.

APPEAL from the Superior Court of Baltimore City.

*Trespass on the case*, brought on the 26th of November 1852, by the appellants against the appellees and John Glenn, as executors of Jos. Wilkins. Glenn died before the trial, and the suit was prosecuted against the other defendants. The declaration filed against all the original defendants, *as executors*, contained four counts, in substance as follows:

1st. That the plaintiffs and their deceased partner, trading as Baugher, Fisher & Allwine, were lawfully in possession of a certain warehouse and store, in which they carried on the business of selling merchandize, and that the defendants

pulled down and destroyed, and caused and procured to be pulled down and destroyed, the side wall of said store and warehouse, thereby injuring the goods of the plaintiffs and rendering their building unfit for their trade or habitation.

2nd. That the plaintiffs were in possession of said premises, as tenants of the defendants, and that the latter permitted and allowed the said side wall to be pulled down and destroyed.

3rd. That the plaintiffs were in possession of the premises, as tenants of the defendants, and that the latter allowed the said side wall to be pulled down and destroyed and another to be erected in its stead, extending through a portion of said warehouse, thereby narrowing it in extent and diminishing the area of it.

4th. That Joseph Wilkins, in his life time, had leased said premises for two years from the 15th of January 1850, and that the plaintiffs had became entitled to the residue of the term of said lease; that Wilkins died leaving the defendants the executors and trustees of said premises, with power to receive the rents accruing under said lease; that the defendants, as such executors and trustees, demanded and received from the plaintiffs the rent as it became due, and recognized and treated them as the lawful tenants of the premises under said lease, and the plaintiffs recognized and treated the defendants as entitled to receive said rents; that the defendants disregarding the relation existing between them, as such executors and trustees, and the plaintiffs, as such lawful tenants, entered into a contract with Israel Griffith, giving him permission and privilege to erect and build, within the limits of said house, a wall of a defined and prescribed location, which contemplated and required said wall to encroach upon said warehouse, as previously enjoyed by the plaintiffs; and that Griffith, in virtue of such permission and privilege, caused to be pulled down a part of the walls by which said building had before been enclosed, and that Griffith did erect and build a warehouse and wall in conformity with said agreement, and in accordance with the permission and privilege so given him, which wall encroached upon the said premises during the period of the said lease.

Plea *non cul.*

*Exception.* The evidence offered on both sides is sufficiently stated in the arguments of counsel and the opinion of this court. The plaintiffs offered four prayers, which it is not necessary to set out at length. The defendants then offered five prayers, of which the first only need be stated, viz:

1st. That the defendants, in their capacity of executors of Jos. Wilkins, could not render his estate liable to damages by any unlawful acts such as are alleged in the declaration, and the plaintiffs cannot therefore recover against them as such executors in this action.

The plaintiffs admitted the law of the defendants' first prayer to be correct, and the same was granted by consent. The court (LEE, J.) then rejected all the prayers of the plaintiffs, and granted all those of the defendants, except the fifth, which was rejected. The plaintiffs excepted to the refusal to grant their prayers, and to the granting of those of the defendants, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Chas. H. Pitts* and *Oliver Miller*, for the appellants, argued:

1st. That although the appellees are named in the writ and declaration *as executors*, judgment might properly have been rendered against them in their *natural character*, as in that character their acts rendered them liable. 7 *H. & J.*, 25, *Curtis' Excr.*, *vs. Bank of Somerset. Ibid.*, 3, *Ayres vs. Toland.* 2 *Selden*, 168, *Merritt vs. Seaman.* 11 *Georgia*, 658, *Shorter vs Hargroves.* 11 *Grattan*, 300, *Fitzhugh vs. Fitzhugh.* 8 *Humph.*, 19, *Braden vs. Hollingsworth.* 3 *Ala.*, 205, *Peters vs. Heydenfeldt.*

2nd. There is abundant evidence in the case that the appellants were the tenants of the appellees, under the parol lease from Jos. Wilkins, of which the appellants were assignees, and under which they held and occupied the warehouse in

question.　They paid the accruing rent to the appellees, and the latter accepted it and gave receipts therefor,. and this is enough to show that the relation of landlord and tenant existed between them.　Under this lease the appellants were entitled to the quiet enjoyment of the demised premises during the term, as against the acts of the lessors, (the appellees,) and all parties claiming through or under them, this being an *implied covenant* in every such lease.　*Archbold's Landlord & Tenant,* 276, 277, in 53 *Law Lib.*, 254, 255.　12 *Mees. & Wels.* 85, *Hart vs. Windsor.*

3rd.　Assuming that Griffith had no right to take down this wall, save that derived from the permission under his agreement with the appellees, then the pulling it down was a wrongful and tortious interference with the appellants' rights, a disturbance of their quiet possession and enjoyment of the premises, and for the injury resulting to them therefrom, it is insisted they had good cause of action against the appellees. By the agreement made with Griffith, and the permission and privilege thereby given to him by the appellees, the injury of which the appellants complain, was expressly permitted and sanctioned by the appellees, and they are just as much responsible therefor as if they had themselves employed workmen to do the same thing.　For a valuable consideration they permitted Griffith to do these acts which resulted in our injury, and he was for this purpose their agent and employee. But it is said this agreement did not authorise the taking down of this wall.　But the permission is, to have "the said partywall *raised* to the height of four stories and to have the same continued in a *straight line* with the *present division wall* to within three feet of the alley in the rear," and by looking at the plat it will be seen that it was impossible for this wall to be thus raised and continued in a *straight line* with the *present division wall* between the other parts of the adjoining buildings, without taking it down and building it up anew from the foundation.　The permission to raise and continue in a straight line, was, therefore, a permission to pull down and rebuild.　That such was the construction of the agreement, is also further proved by the appellees' own evidence.

Dixon and Carson, their witnesses, say "that it was not until the upper part of the wall, C. D. E. had been *taken down,* and they had discovered the necessity of *taking it all down,* that they and Mr. Griffith thought of applying to the executors of Joseph Wilkins, deceased, *for their consent,* and it was not until that time that they *did so apply* to said executors." The agreement was, therefore, applied for and made, in view of the necessity of taking this *whole wall down,* and can it be doubted that all the parties to it understood perfectly well, that it was to be taken down and a new one built on a new foundation, so as to make the whole line between the two premises a straight line? If this be so, it is clear, that the taking down of this wall and the building up a new one, abridging the area of these premises held by the appellants as *tenants,* was the act of the appellees, their *landlords,* for which, and for all injury resulting to the tenants therefrom, the landlords are responsible, under the implied covenant for quiet enjoyment in the lease.

4th. There is proof, from which the jury might have found this to be a *party-wall,* or, at least, that the occupiers of the premises held by the appellants, had an *easement* therein. It is true, there is evidence, on the part of the appellees, that the wall stood entirely on Griffith's lot, but in opposition to this, there is the agreement in which Griffith admits, under his hand and seal, that it was a *party-wall, standing equally on both lots,* and it was for the jury to decide this question of fact, about which there was conflicting evidence. The appellants further proved, "that the wall marked C. D. E., had been standing for twenty-one years prior to said pulling down, and a part of it had been used as the western wall of the back building of said warehouse, No. 285, during said period, by the owners thereof, and those claiming under them as aforesaid." In either event, that is, whether this was a *party-wall,* or the plaintiffs had an easement therein, Griffith had no *lawful* right to pull it down, nor had the appellees lawful right to permit him to do so, and especially without *notice* to the plaintiffs of the intention to do so. It was a trespass, for which the plaintiffs had their remedy against

those who did the act and those who authorised it to be done. The modern authorities are full to the point, that, in the absence of legislation conferring it, there is no *right* to take such a wall down for the mere purpose of *improving* the adjoining premises—*necessity* alone confers upon the owner of such premises the right to take down and rebuild a *party wall.* 4 *Johns. Ch. Rep.*, 334, *Campbell vs. Mesier.* 15 *New York*, 601, *Partridge vs. Gilbert, et al.* 4 *Duer*, 53, *Eno vs. Del Vecchio.* 5 *Duer*, 553, *Webster vs. Stevens.* 6 *Duer*, 17, *Eno vs. Del Vecchio.*

*John H. Thomas* and *S. Teackle Wallis,* for the appellees, argued:

1st. That the evidence shows that all of the wall which was torn down was exclusively upon Griffith's lot, and it was, therefore, his property, and he had the right to remove and replace it. The owner of adjoining property could only have an easement in it, or the right to use a new wall when built as he had used the old one. Such easement could only be acquired by grant, or by uninterrupted enjoyment for a period sufficient to establish it by prescription. 3 *Kent*, 437, 442, 443. 4 *Sandf. Ch. Rep.*, 72, *Wolfe vs. Frost.* 2 *Barb. Ch. Rep.*, 231, *Pitkin vs. Long Island Rail Road Co.* 1 *G. & J.*, 366, *Hays vs. Richardson.* 11 *Md. Rep.*, 340, *Richardson vs. Milburn.* There was no evidence that the part of the wall which was taken down was not entirely the property of Griffith; that any one had acquired even an easement therein, and that he was not entitled to take it down when he pleased, without regard to the appellants or appellees. He might have recovered it in ejectment, and had, of course, a right to take it down quietly, if he could; he might have built a new wall on his own premises and have refused to the appellants or appellees the right even to build against it. Even if this was a party-wall, he would have been entitled to take it down for the *improvement* of his own premises, if he used reasonable care, and this whether *necessary* or not; if the necessity be established, the co-owners were bound to contribute to the expense of rebuilding it. 3 *Kent,*

437.  4 *Johns. Ch. Rep.*, 336, 341, *Campbell vs. Mesier. Toylor's Landlord & Tenant*, 117, 118.  The necessity of rebuilding the wall in question, is shown by the witnesses on both sides.  Every precaution was taken to prevent injury to the appellants.  Even if this had not been done, Griffith, and not the appellees, would have been responsible.  They only assented to his doing what he had a right to do without their consent, and stipulated that proper precautions for the protection of the appellants should be used.  If he had no right, the assent of the appellees could not any more than that of a stranger, give it as against the appellants, and could impose on the appellees no liability.  It was the mere waiver of any objection on their part.  As executors, they had nothing to do with the realty, and their consent gave Griffith no right and imposed on them no liability whatever.

2nd.  But even if it is conceded that the relation of landlord and tenant existed between these parties, still the appellees were not responsible.  This responsibility is sought to be deduced by the agreement made with Griffith.  This agreement, however, gave him no right to *pull down* this wall.  It simply gave him permission to have the party-wall *raised* to the height of four stories, and to continue it in a straight line to the rear.  This is not a permission to take down and rebuild, and Griffith, if it be conceded he had no right to take the wall down, obtained no such right from this agreement, and he was, therefore, a mere trespasser, for whose acts the lessors were not responsible to their tenants.  *Archbold's Landlord & Tenant*, 283.  7 *Md. Rep.*, 337, *Hess vs. Newcomer.*  6 *Mees. & Wels.*, 458, *Granger vs. Collins.*

3rd.  There is no proof that the relation of landlord and tenant existed between these parties.  At the time of the injury complained of, the appellants held under a lease from Joseph Wilkin's in his lifetime, with which *his executors*, as such, had nothing to do.  The will is not in evidence to show that they had any power over the realty, and there was no *privity* between these parties.

4th.  The appellees were sued in their representative capacity, and not personally in their natural capacities.  The writ,

declaration and every averment therein, are against them as *executors*. Their contract, which is the foundation of the action against them, could derive no efficacy except from their character as executors. Now, by the assent to the granting of the appellees' first prayer, it becomes the law of the case, and it is conceded there can be no recovery against them as executors, and it is submitted that under the pleadings in this case, there can be no recovery against them in their individual capacities. 2 *Wms. Excrs.*, 1464, 1469, 1507. 10 *Bing.*, 51, *Aspinall vs. Wake,* in 25 *Eng. C. L. Rep.*, 25.

LE GRAND, C. J., delivered the opinion of this court:

This is an action on the case instituted by the appellants against the appellees and John Glenn. The death of Glenn having been suggested before the trial of the cause, the proceedings were stayed as against him and prosecuted against the others.

The declaration against all the original defendants was as executors, and contained four counts. The substance of these, it is agreed, is correctly stated by the appellees in their brief. (*Ante., 35, 36.*)

The appellants asked four instructions, all of which were refused; and the appellees for five instructions, the first of which was admitted to be correct, the second, third and fourth were granted, and the fifth rejected by the court. The questions presented by the rejection of the appellants' prayers, and the granting of the second, third and fourth prayers of the appellees, we are now to decide upon the evidence and pleadings in the cause.

At the trial evidence was given that the appellants, together with their deceased partner, Allwine, were the tenants and occupants, as assignees of a parol lease from the testator of the appellees, of warehouse, No. 285, Baltimore street, in the city of Baltimore; and that whilst the tenancy existed, Israel Griffith was the owner of a lot and warehouse adjoining, there being, to a limited extent, a party-wall, common to both warehouses. On the other hand, evidence was given that the wall which was taken down was wholly on the lot of Griffith.

The responsibility of the appellees is derived principally from a paper signed and sealed by the executors of Joseph Wilkins, deceased, of date the 29th day of April 1851. This paper, after reciting that Israel Griffith was the owner of a lot on the south-east corner of Baltimore and Sharp streets, adjoining a lot of ground belonging to the estate of Joseph Wilkins, deceased, and that there was, to a certain limited extent, between the two lots, and equally on both, a party-wall, gives "permission and privilege unto the said Israel Griffith, his heirs, executors, administrators or assigns, to have the said party-wall raised to the height of four stories, and to have the same continued in a straight line with the present division wall to within three feet of the alley in the rear." This permission and privilege was given on the following conditions: 1st. That Griffith should furnish the materials and have the work done without any charge to the executors or the estate of Joseph Wilkins. 2nd. That the trustees and executors, or heirs of Joseph Wilkins, or their successors or assigns, should have the privilege of using and building into the party-wall, throughout its extent in length and height, and to the depth of four and a half inches into its breadth. 3rd. That Griffith should have the house standing on Wilkins' lot, boarded up in such place or places as may be left open by the operations necessary to raise and lengthen the party-wall.

There was a plat of the wall and premises given in evidence by the plaintiffs, on which was designated by the letters C. D. E., that part of the division wall claimed by the plaintiffs to have been partly upon the lot occupied by them as tenants. It was proven that the original improvement did not contemplate the tearing down of this part of the wall, but only to use it in the proposed improvements; that after the main warehouse of Griffith had been taken down, and the excavations made for the cellar, he tore down a portion of the wall C. D. E., which exposed the loft of the back building of the warehouse occupied by Baugher, Fisher & Co., and finding this part of the wall had been built at different times, and was weak and defective, he determined that

it was necessary to tear it down also, and on the last of April, or the first of May, began to take it down, and in doing so opened and exposed the back-building of the warehouse of Baugher, Fisher & Co.; that the space so opened was boarded up with boards, some of which were lapped and some placed horizontally, and that it remained in this condition for some weeks. It was also proven by the plaintiffs, by a competent witness, that their goods were protected only by a plank partition, and that they were very much confused and piled up, and suffered a great deal from lime and dust; that they could not have been sold within five per cent. of their original value. The appellees gave evidence that the wall, C. D. E., was taken down only because it was found to be weak and defective, that the place was boarded up in the usual way, and every precaution used to prevent the occupants of the next house from being injured thereby, more than was unavoidable. And also, that it was not until after the upper part of the wall, C. D. E., had been taken down, it was discovered there was a necessity for taking it all down. The plaintiffs also gave testimony to show, that by the erection of the new wall, their warehouse was abridged about ten inches in breadth at the part where the old wall, C. D. E., had stood.

The will of Joseph Wilkins, deceased, is not in the record, and we are therefore uninformed of its provisions. But the agreements of the appellees and their deceased associates Glenn and Griffith, describe the former as "trustees" as well as executors. In the absence of the instrument conferring any upon them, we know not what authority they had, *as trustees*, to deal with the realty of Wilkins' estate. But, we feel authorized to assume, at least as far as the purposes of this action are concerned, that they had power to enter into the stipulations which they did.

Questions were presented in argument which, in our view of the case, it is unnecessary to decide. We content ourselves with the statement of a few principles sustained by authority and which bear on the decision we give.

It is undoubtedly true, that a lessee who holds under one

who has a fee in the premises demised, is entitled to the quiet enjoyment of them during *his term*, and there is an implied covenant to that effect on the part of the lessor in the case where none is expressed, if the contrary be not stated. But this implication does not extend to indemnity against injury or disturbance from the acts of a mere trespasser. It is confined to the acts of the lessor and all claiming through or under him, or in trust for him and those of persons having lawful title. *Archbold's Law of Landlord & Tenant*, 276, *marginal*. And in the case where the covenant was for quiet enjoyment, without the let of the lessor and his heirs, and "of all and of every other person or persons whomsoever," it was holden that these words meant lawful interruptions, and not the let or interruption of a stranger having no right. *Dudley vs. Folliott*, 3 *Term Rep.*, 584.

The cause of complaint of the appellants grows out of the pulling down of the wall C. D. E., the building of another in its stead, and, as a consequence, the diminishing the area of their possessions. And these, it is alleged, were superinduced by the permission and privilege given by the appellants. Waiving all consideration of the question, whether, if a necessity existed for doing so, Griffith on due notice had not a right to remove the wall and build a new one, a question on authority very far from easy answer, it is clear, that the language of the paper, executed by the appellees, did *not* give any permission or privilege, either to pull down the old wall, or to diminish the possessions of the appellants. What it authorized Griffith to do was, *"to have the said party-wall raised to the height of four stories, and to have the same continued in a straight line with the present division wall to within three feet of the alley in the rear."* Of this there is no complaint. That which is complained of was not authorized by the appellees. Whatever injury resulted to the appellants from the changes made, flowed from the acts of Griffith, and if there be responsibility anywhere, it is with him.

These observations cover the whole case, and are deemed sufficient to show that the plaintiffs cannot maintain the ac-

Baugher, *et al.*, *vs.* Wilkins' exc'rs.

tion. We concur with their counsel, however, that had it been established that the appellees were naked executors of the will of Joseph Wilkins, and had done the injury complained of under the pleadings in the cause, they would have been liable in their individual capacities. The authorities cited by counsel for appellants, are decisive on the point.

It was agreed by the consent given to the defendants first prayer, that there could be no recovery against the defendants as executors. That consent makes the prayer law, so far as *this* appeal is concerned; and we have shown that there can be no recovery against them in their individual or representative capacity, on the pleadings and evidence.

It follows, from what we have said, that the plaintiffs sustained no injury from the refusal of their prayers, nor from the granting of some of those of the defendants. Inasmuch as we are of opinion there can be no recovery in this case, we affirm the judgment without reference to the precise language of the instructions refused on the one side or granted on the other.

*Judgment affirmed.*

*Per* ECCLESTON, J.—I concur in the opinion of the court, as delivered by the Chief Justice, except that I do not consider it necessary to express any opinion on the question as to whether, if it had been established that the appellees were merely executors of the will of Joseph Wilkins, and had done the injury complained of, under the pleadings in the cause, they would have been liable in their individual capacities.

(Decided June 1st, 1860.)