JARRETT *v.* SCOFIELD ET AL.

[No. 31, October Term, 1952.]

*Decided November 11, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles A. Thompson,* with whom were *V. Calvin Trice* and *Harrington & Thompson* on the brief, for the appellant.

*William D. Gould,* with whom were *Gould & Edmondson* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

In 1944, J. Wilbur Jarrett, the appellant, bargained and sold unto Scofield Brothers, the appellees, by written contract, certain timber standing on his property in the Taylors Island Election District of Dorchester County.

One of the covenants of this contract was for quiet enjoyment, expressed in the following language:

> "That the said parties of the second part shall have (legal—J. S.) quiet and peaceful possession of the land while cutting and removing said trees and timber, and shall not be involved in any (just—J. W. J.) disputes as to the right to cut and remove said trees and timber, the said party of the (1st—J. S.) part hereby covenanting to protect and save them harmless in the event of any contention as to lines or boundaries or their right to cut and remove the trees and timber herein bargained and sold."

The word "legal", followed by the initials "J. S." in parentheses, and the word "just", followed by the initials "J. W. J." in parentheses, were inserted by the parties at a conference immediately preceding the execution of the contract.

Shortly after its execution and after the cutting of the timber had begun, one Oliver Gore brought an action of trespass in the Circuit Court for Dorchester County against J. Wilbur Jarrett and Joseph Scofield, one of the partners of Scofield Brothers, alleging that these defendants had entered upon his land and cut down and carried away a large number of his trees. The court gave a directed verdict in favor of Jarrett, and the jury found in favor of Scofield, thus establishing the title and possession of Jarrett to the lands on which grew the timber he had sold to Scofield Brothers, and as to which he had executed the covenant of quiet enjoyment. This court affirmed the judgment of the lower court in *Gore v. Jarrett*, 192 Md. 513, 64 A. 2d 550.

After the institution of the trespass suit, a meeting was called to discuss the strategy and mechanics of its defense, attended by Messrs. Jarrett and Joseph Scofield, Lawrence Simmons, a surveyor, and Messrs. James A. McAllister, V. Calvin Trice and Emerson C. Harrington, Jr., attorneys of Dorchester County. Mc-

Allister and Trice represented J. Wilbur Jarrett. Emerson C. Harrington, Jr. was Mr. Scofield's counsel, and for him, had prepared the contract here involved. However, he had on occasion also represented Mr. Gore, the plaintiff in the trespass suit, and informed Mr. Scofield that he would be unable to represent him in that case. Mr. Scofield then, on the spot, employed McAllister and Trice to represent him, and agreed to pay them each a retainer fee of $100.00. This he did within a day or two, marking the checks "Retainer Fee per Agreement 12-19-44". The trial and appeal in the trespass case took some four years, during the course of which Mr. Scofield mailed to McAllister and Trice four additional checks for $200.00 each, two in 1948, marked on their face "Account Legal Fees, Jarrett Case", and two in 1949, marked "Balance due on legal fee Jarrett Case", on Mr. McAllister's check, and "Balance on Gore Case", on Mr. Trice's check. After the affirmance of the trespass suit in this court, Mr. Scofield, for the first time, made demand on Mr. Jarrett for the counsel fee which he had paid McAllister and Trice. Mr. Jarrett made no reply to a series of letters requesting payment of the thousand dollars.

As a result, a suit was brought for its recovery by Joseph Scofield and others, trading as Scofield Brothers, against J. Wilbur Jarrett. It was tried before the court without a jury, and the court found for the plaintiff. It is the contention of the appellant that this was error because he covenanted only against disturbance in the possession and enjoyment of the appellees by one having a legal and just right, by virtue of paramount title, to evict. He contends, further, that since Mr. Gore's rights were said by the jury and this court not to fall within that category, there has been no breach of his covenant, and consequently, the appellees may not recover from him either damages or expenses. The appellees, on the other hand, take the position, shared by the court below, that the obligation under the covenant went so far as to protect and save Scofield

Brothers harmless " in the event of *any* contention as to lines or boundaries, or to right to cut and remove the trees and timber herein bargained and sold." We think that the appellant is right. The covenant of quiet enjoyment is that the appellees shall have *legal* quiet and peaceful possession, and obligation arises only in the case of *just* disputes as to the right to cut and remove said trees and timber. As we see it, the language relied on by the appellees, which concludes the paragraph in question, does not add to nor extend the scope of the undertaking of the covenantor so as to include assaults on title or lines, unfounded or unjust as a matter of law.

It is the established rule that a covenant of quiet enjoyment is broken only by entry upon or an expulsion from the land or some actual disturbance of the possession of the land by virtue of paramount title or right. There must be an eviction or ouster, actual or constructive, from the premises conveyed or leased, or some portion thereof by title paramount. The covenant for quiet enjoyment is not broken by a disturbance of possession by one who asserts an inferior right to possession. See *Baugher v. Wilkins,* 16 Md. 35, where the court expressed the rule as follows:

> "And in the case where the covenant was for quiet enjoyment, without the let of the lessor and his heirs, and 'of all and of every other person or persons whomsoever', it was holden that these words meant lawful interruptions, and not not the let or interruption of a stranger having no right."

To the same effect are *Tiffany, Real Property,* 3rd Ed. Volume 4, Sections 1010, 1011 and 1012. (See also Volume 1, Sections 91, 92, as to the covenant in case of leases.) *Andrus v. St. Louis Smelting & Refining Co.,* 130 U. S. 643, 9 S. Ct. 645, 32 L. Ed. 1054; *Fishel v. Browning,* 145 N. C. 71, 58 S. E. 759.

The question as to whether a covenantee who has incurred expenses and expended counsel fees in de-

fense of the property as to which the covenant is given may recover these fees from the covenantor has been answered in various ways in the several jurisdictions in cases where there has been total or partial eviction or ouster, that is to say, in cases where the defense has been unsuccessful. In some States, he is allowed the reasonable amount of fees paid his attorney; in others, his rights to attorneys' fees are denied. In some States, the view has been asserted or suggested that attorneys' fees should be recoverable only in case the covenantee notified the covenantor of the litigation in time to enable the latter to determine the advisability of contesting the adverse claim and permitting him to retain counsel of his own selection, and at his own cost. Maryland, in a case in which the covenantee has been unsuccessful in the defense of his title, has followed the third alternative. See *Crisfield v. Storr,* 36 Md. 129. The court in that case held that, where an assignee of the covenantee was evicted counsel fees paid by the assignee for the unsuccessful defense of the suit could not be recovered as part of the damages, since he voluntarily undertook to defend his title instead of giving notice to the covenantor, or those bound by the covenant to do so. The court indicated that if the covenantor had received notice to defend, and neglected to do so, the recovery for the counsel fees paid by the assignee could have been had.

Whatever the rule, where the defense of the title to the property involved is unsuccessful, it seems clearly established that, where the defense is successful and the title of the covenantee is found good, he cannot recover counsel fees which he has paid for his successful defense. The rule is stated in 21 C. J. S. *Covenants,* Section 150, page 1029, as follows:

> "A covenantee can recover no expenses incurred in maintaining or defending an action based on unfounded claim."

The rule has been applied to counsel fees in various cases. See *National Bank of Decatur v. Jack,* 334 Ill.

App., 186, 78 N. E. 2d 805; *Richmond Fairfield Ry. Co. v. United States Housing Corp.*, 63 App. D. C. 285, 72 Fed. 2d 78; *Fishel v. Browning, supra; Smith v. Parsons*, 33 W. Va. 644, 11 S. E. 68; *Eaton v. Clarke*, 80 N. H. 577, 120 A. 433; *Peterson v. Reishus*, 66 N. D. 436, 266 N. W. 417, 105 A. L. R. 724.

The appellees rely upon the case of *Chesa. & Ohio Canal Co. v. County Commrs. of Allegany County*, 57 Md. 201, where one Eyler had recovered judgment for damages and costs against Allegany County for injuries sustained while riding on horseback along a public county road which ran over a bridge across the Chesapeake & Ohio Canal. His injuries were incurred while crossing the bridge because of its defective condition. Allegany County paid the judgment and instituted an action against the Canal Company to recover the amount of damages and costs, and also counsel fees incurred by it in conducting the defense. The County prevailed in the suit. We think, however, that both the facts in that case and the principles of law which controlled it, have no application here. There, there was liability on the Canal Company, which might itself have been sued originally by the injured person. Allegany County having first been sued, the ultimate liability was still the Canal Company's. It had notice of the suit against Allegany County and permitted the County to defend, knowing or being presumed to know that if the defense were unsuccessful, it would be liable finally.

The covenant involved in the present appeal was not breached. The appellant cannot be called upon for damages by virtue of its mere execution. No more, may he be made liable for counsel fees paid by the appellees in defending a suit, the success of which benefitted the appellees, as well as the appellant.

For the reasons given, the judgment below will be reversed.

*Judgment reversed with costs.*