THE TEXAS BANKING AND INSURANCE CO. V. COHEN AND SAMPSON.

INSURANCE.—A partnership composed of three persons obtained a policy of insurance on a stock of goods for one year. The policy contained the following provision, viz : "This policy is not assignable unless by consent of this corporation, manifested in writing; and in case of any transfer by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect." During the year, one of the three partners retired from the firm, selling his interest in the partnership to his copartners, after which, and while the business was being carried on by the remaining members of the firm, at the same place, the goods were destroyed by fire. In a suit by the two remaining members of the firm to recover the amount of the policy : *Held*—

1. That the sale by one partner to his copartners of his interest, did not, on account of the proviso in the policy, release the company.

2. Considering the scope, object, meaning, and spirit of the contract, such a sale and retirement of one of the partners is not such a change in the persons to the contract, and in the interest

in the property lost, as to prevent a suit on the policy by the firm as it existed when the loss occurred; and the proviso in the policy must be understood as intended to prevent only the "sale" and "transfer" of the proprietary interest of those with whom the insurers contracted, to others, with whom they had not consented to contract.

3. The insurance was intended to cover the mercantile stock of which the assured were proprietors, stored from time to time in the building in which that business was conducted. There was no substantial change caused by the sale by one partner to the others material to the risk, and clearly none within the intent of the proviso.

4. Changes in a firm, of the character complained of by appellant, often occur from the death or bankruptcy of one of the parties; and it was the duty of the company, in view of the conflicting opinions entertained by the courts of different States on the point involved, to make the stipulations of the policy so plain as to leave no doubt of the intention.

### ON REHEARING.

The wording of the provision in the policy is such that it may be regarded as embracing both a stipulation against the assignment of the policy, and against a transfer of the property insured, but whether it referred to one or the other is immaterial, as the release by one partner to. his copartners of his interest in the firm is neither such an assignment of the policy or transfer of the property as was contemplated by the stipulation in the policy.

APPEAL from Galveston.    Tried below before the Hon. A. P. McCormick.

*Miller & Cleveland,* for appellant.

1. The policy sued on was a contract to indemnify three persons against loss by fire of goods belonging to them. It was not a contract to insure the goods in whosesoever possession they might be, or to whomsoever they might belong. In other words, the contract was personal, and did not follow the property unqualifiedly. This is of the essence of the contract. (Flanders on Fire Ins., 1.)

2. The appellees could maintain no suit on the policy without averring and proving an assignment to them of Henry

Sampson's interest and the company's assent thereto. "A contract with several persons, for the payment to them of a sum of money, is a joint contract with all, and all the payees therein have a joint interest, so that no one can sue alone for his proportion." (1 Parsons on Cont., 13.) The case of Baltimore Fire Insurance Company v. William McGowan and John C. McGowan is a direct decision on this point. (16 Maryland, 45.)

3. The transfer by Henry Sampson to his partners of his interest in the goods insured, without notification to and the assent of appellant, avoided the policy.

Flanders, in his recent work on insurance, pages 428, 429, lays down the rule to be, that "where insurance is affected by partners or cotenants, a sale of all his interest by one cotenant, or by one partner to another, is within the prohibition of a policy of insurance, which declares that alienation, 'by sale or otherwise,' shall forfeit the policy; and under such a clause against a transfer or change of title, a dissolution of the firm and a division of the partnership property among the partners, so that each is to hold his share separately and distinctly, is not strictly a sale of the goods, yet it operates a change of title and discharges the insurers." And so, Parsons, in his work on contracts, pages 19 and 20, edition of 1864, lays it down as a general proposition, that a guarantee to a partnership is extinguished by a change of the firm, although the partnership name is not changed, and that this has been held to be the effect of such change, although the guarantee to the firm was expressly for advances by them or either of them. He says, " a guarantee may doubtless be a continuing contract, and be unaffected by a change of circumstances as to the subject-matter; and also as to the parties for whose benefit it shall inure, etc., provision may be made for its validity to a partnership after a change of members. But, from what has already been said, it will be obvious that, unless the contract of guarantee expressly provides for these

changes, their occurrence discharges the guarantor from his obligation."

Counsel cited Portsmouth Ins. Co. v. Brinkley & Co., 2 Law Journal, 483; Hartford Ins. Co. v. Ross et al., 23 Ind., 181; Dix v. Mercantile Ins. Co., 22 Ill., 278; Finley et al. v. Lycoming Mutual Ins. Co., 6 Casey, 311.

*F. Charles Hume*, for appellee.—We hold that the transfer made by Henry Sampson to plaintiffs, his partners, of his interest in the partnership, was no violation of that clause of the policy expressed in the following words: "This policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect." The transfer meant by that language is not that made by one partner to another of a policy issued originally to the firm composed of the two. (Pars. on Merc. Law, 533; May on Insur., 99; Ang. on Life and Fire Insur., 197.) It is true that the law has been ruled otherwise by some courts of last resort, but I think an analysis of the cases will disclose that not only is the weight of authority with us, but also the better reason.

Counsel then discussed the following cases: Hoffman v. Ætna F. I. Co., 32 N. Y., 405; McMasters v. The Westminster Mut. Ins. Co., 25 Wend., 379; Howard v. The Albany Ins. Co., 3 Denio, 301; Tillou v. Kingston Mut. Ins. Co., 7 Barb., 570; Wilson v. Genesee Mut. Ins. Co., 16 Barb., 511; Day v. Pough. Mut. Ins. Co., 23 Barb., 627. The review of these cases was exhaustive, and much reliance was placed on the reasoning contained in the opinion in Hoffman v. Ætna F. I. Co., 32 N. Y., 405.

ROBERTS, CHIEF JUSTICE.—The partnership, composed of Cohen and two Sampsons, took out a policy of insurance on a stock of goods for one year, and during the year one of the Sampsons retired from the firm, by selling to his copartners

his interest therein; after which, the business being continued by the remaining members of the firm, in the same place, the goods were destroyed by fire before the end of the year. The remaining partners having recovered a judgment against the appellant, the only question at issue, as agreed upon by the counsel, is, whether or not the company is released by such a sale, by one partner to his copartners, under and by force of a provision of the policy of insurance, in the following words, to wit: "This policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer, by sale or otherwise, without such consent, this policy shall, from thenceforth, be void and of no effect."

This question has arisen upon similar stipulations in policies of insurance in many of the States, in most of which it has been decided that the company is released by a sale of this sort and the retirement of one of the partners of the firm. In a few others, including New York, the contrary rule is adopted. In the former class, the change in the parties to the contract of insurance, and the change in the parties who sustained the damage in the loss of the property by fire, are the influencing considerations in forming the judgment; and as different persons own the property lost, that must constitute the damage done, from the persons who made the contract, a suit cannot be maintained by the less number of persons who owned the property when it was lost. (The Baltimore Fire Ins. Co. *v.* McGowan, 16 Md., 45; Wilson *v.* Hill, 3 Metc., 69; Tate *v.* M. F. Ins. Co., 13 Gray, 80.) This would seem to rest on the general doctrine of the rights of parties to sue upon joint contracts, rather than upon the breach of the stipulation in the policy now under consideration. (Pars. on Cont., 13.) In other cases, an additional and a broader view is presented, in which it is considered that the company contracts for the care, diligence, and integrity of each and all of the members of the firm contracted with, in the preservation of the property from loss, as part of the inducement to and consideration of the contract; and that a sale by one of the

partners, and his retirement from the firm, without the written consent of the company, is a substantial change of the parties to the contract, which this stipulation in the policy was designed to protect it against.    (Keeler v. Niagara F. Ins. Co., 16 Wis., 537; Hart. F. Ins. Co. v. Ross et al., 23 Ind., 181.)

In the latter class of cases, in which the Court of Appeals, in the State of New York, takes the lead, all of these grounds are attempted to be answered by the conclusion that, considering the scope, object, meaning, and spirit of the contract, such a sale and retirement of one of the partners is not such a change in the persons to the contract, and in the interest in the property lost, as to prevent a suit on the policy by the firm, as it existed when the loss occurred, and that stipulation in the policy under consideration must be understood as intended to prevent only the sale and transfer of the proprietary interest of those with whom the insurers contracted; to others, with whom they had not consented to contract.

This view is summed up, in a case similar to the one before us, as follows, to wit:

"The plaintiffs were parties to the contract made with the defendant.    They were conducting the business contemplated by the terms of the policy.    The insurance was intended to cover the mercantile stock, of which the assured were proprietors, stored, from time to time, in the building in which that business was conducted.    There was no substantial change material to the risk, and clearly none within the intent of the proviso. · Each member of a partnership firm, as Lord Hardwick said, is seized, per my. et per tout, of the common stock and effects."    (West v. Skip, 1 Ves. Sr., 242.)

"This interest of each and all the policy in question was designed to protect, and its language, fairly construed, is in harmony with this intent.    There is no reason why the full measure of agreed indemnity should be withheld from the plaintiffs, who were owners at the date of the insurance, and sole owners at the time of the loss."    (Hoffman v. Ætna Fire Insurance Company, 32 N. Y. Rep., 416.)

The reasons upon which this conclusion is reached in the case cited are so elaborate and exhaustive as to render it unnecessary to repeat them, or to seek to improve upon them. It is founded upon a liberal equity in reference to the objects of both of the parties in making the contract of insurance, and is believed to be in harmony with our system of jurisprudence in Texas. This court having the question before it now, for the first time, coincides in opinion with the Court of Appeals of the State of New York, in the case above cited. Apart from having to determine between conflicting views of great weight presented on each side of the question, it is worthy of consideration in respect to the weight of authority, that the decision cited and relied on in aid of our own judgment, emanates from the Court of Appeals, in a State wherein is situated the great commercial metropolis of the continent, and that it has been recently followed by two other States, and has been incidentally referred to, without objection, by the Supreme Court of the United States. (Burnett *v.* Eufaula Insurance Company, 46 Ala., 53; Pierce *v.* Nashua Insurance Company, 50 N. H., 297, cited from 9 Am. Rep., 235; Phœnix Insurance Company *v.* Hamilton, 14 Wall., 509.)

A consideration of importance in this matter is, that it is well known that such changes as this in the parties of a firm, and others of like character, such as the death or bankruptcy of one of the partners, are of very frequent occurrence, without materially altering, practically, the business or character of the firm; and if insurance companies regard such changes as prejudicial to their interest, it is their duty (especially in reference to the conflict of authority on the subject) to make the stipulations in the policy plain in that respect, which they can easily do.

AFFIRMED.

IRELAND, ASSOCIATE JUSTICE, (dissenting opinion.)—While I concur in the judgment announced in this case, I differ with

my brother judges as to the construction to be given to the following clause, to be found in the policy of insurance upon which this action was brought:

"This policy is not assignable, unless by consent of this corporation, manifested in writing; and, in case of any transfer, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

It is contended in the argument, and so treated and held by the majority of the court, that this clause refers to the stock in trade or property insured, and that, as one of the partners sold his interest to the other two, and retired from the firm without such "permission, manifested in writing," the policy was thereby rendered null and void. I am clear and decided in my opinion, that the clause of the policy referred to does not apply or have reference to the stock or property insured, but that it refers entirely and exclusively to the policy or written contract between the parties thereto. I do not believe that it can, by any correct rule of construing terms and language, be made to apply to the property insured. Language which is plain and unambiguous does not need or admit of construction. There is nothing to construe.

"Construction" and "interpretation" are often used to convey the same meaning, though technically they convey different meanings. "Interpretation" is the proper word here, and it is defined to mean "the act of finding out the true sense of any form of words—that is, the sense which their author intended to convey." (Legal and Political Hermeneutics; Smith's Commentaries, 600.)

The same rules are to govern in construing contracts, constitutions, and laws. "What did the author mean?" is the true inquiry. (United States v. Fisher, 2 Cranch, 399; Bosley v. Mattingly, 14 B. Monr., 73; People v. Purdy, 2 Hill, 35.)

"Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpreta-

tion, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed." (Cooley on Limitations, 57.)

Now, where is the authority for saying that the authors of this contract, when they said "this policy," meant to say, the house or goods insured, or the association of copartnership between Cohen, Sampson & Co. ? The words, "this policy," are twice used in the clause quoted: first, they are used in defining the terms of the agreement; and, second, they are used, in the latter part of the clause, in denouncing the penalty in case of a violation. "And in case of transfer by sale or otherwise," most clearly refers back to what had preceded. The conjunction "and" here performs its appropriate and usual office; and to hold that this clause refers to a change of partnership, or sale of the property, it seems to me, would convict the authors of that instrument of being destitute of a knowledge of the meaning of words of constant and universal use throughout the commercial world.

To give this clause of the policy the construction adopted by a majority of the court, would, in case of death of either of the parties composing the firm of Cohen, Sampson & Co., vitiate the policy, and render it void in case of loss by fire, for, undoubtedly, a change of ownership by descent would be a transfer " otherwise." A clause like the one under review, in all respects, underwent review in the Supreme Court of New York. In that case, Judge Bronson says: " I have felt some difficulty in construing this clause of the policy, and have tried to read it as the plaintiffs' counsel reads it, so that it will apply to the plaintiffs' interest in the subject insured, and

not to the contract. But the language is, that the policy is not transferable; and as the condition is a sensible one, as it stands, I do not see how we can substitute another word without making a new agreement for the parties." (Smith v. Saratoga, 1 Hill, 498.) The case went back, and again came before that court, when the court (Bronson, Judge) said: " I still adhere to the opinion already expressed, 1 Hill, 497, that it is the policy or contract of insurance, and not the subject insured, which the parties have declared not assignable." (3 Hill, 510.)

## On Rehearing.

The cause was reargued quite at length by counsel on both sides. The concluding portion of the brief of appellants' counsel, on rehearing, is given.

*Willie & Cleveland,* for appellant.—In the case here at bar, the stipulation was, in short, that the parties to the contract, in all the relations they sustained to each and to the subject insured, should remain the same, without any voluntary act changing these relations upon the part of either without the consent of all. Is this consistent with the objects and purposes of a well-regulated system of insurance? Is the contract against public policy? Is its force and import to be destroyed by construction against the obvious language used by the parties to the contract? If it be necessary to resort to construction to ascertain the import and application of the prohibition, is it, not a safer rule of decision to follow the courts of the greatest number of States, than to limit ourselves to the guidance of one, and that one not consistent with itself? In evolving what the law is, this is an important inquiry. If we would avoid what is to be deplored—conflicting decisions—upon questions doubtful, on subjects of general as contradistinguished from local interests, is it not best done by following those of the greater number of tribunals

where they are entitled to respect? Just here we take occasion to call the attention of the court to the difference between the clause of policy here involved, and that which was involved in the case of Hoffman v. Ætna Insurance Co., 32 N. Y., 416. In that case, the prohibition was against any "alienation ·or conveyance of the property insured without the consent of the company." In this case the prohibition is against any transfer of the policy as well as against alienation of the property without the consent of the company. To transfer the policy, (before loss,) would require consent; to alienate the property, would require consent. Both could be done by consent. There can be no such thing as "equitable assignment" of the policy here sued on. By the terms of the contract, it could be only assigned, by consent of the company, before a loss. The cases cited in our brief heretofore filed are in point. The New York case is not just like this.

In Portsmouth Ins. Co. v. Brinkley & Co., decided by the Court of Appeals in Virginia, reported in the 2d vol. Insurance Law Journal, p. 843, and in the case of Finley et al. v. Lycoming Ins. Co., decided by the Supreme Court of Pennsylvania, (6 Casey, 311,) and in Keeler v. Niagara Fire Ins. Co., decided by the Supreme Court of Wisconsin, (16 Wis., 547,) the clause construed is identical with the one in the policy now before this court. (See also Hartford Fire Ins. Co. v. Ross et al., 23 Ind., 181; Dix et al. v. Mercantile Insurance Co., 22 Ill., 278; 2 Parsons on Contracts, edition of 1864, pp. 19, 20; 18 Missouri, 128; 16 Maryland, 45; 3 Metcalf, 69; 13 Gray, 80.)

These decisions are from courts of the very highest respectability. Parties in making or construing their contracts would have a right to rely on their persuasive, if not their authoritative force; and we think the contract in question is best interpreted by the light of the decisions, unless that rule which is always applied by the jury in such cases is to become a rule of decision with the courts,—that the construc-

tion of the contract must, in all cases of doubt, no matter what interests are involved, public or private, be resolved against an incorporation.

The question now here before the court came before the Supreme Court of Tennessee, in the case of Hobbs *v.* Memphis Insurance Company, 1 Sneed, 444, where two partners in trade took an insurance on their stock of goods, and during the continuance of the policy, and before the loss, one of the partners sold and assigned his interest in the stock of goods to the other, but did not assign the policy, which provided " that it should become void by assignment without the consent of the underwriters." It was held that, a part only of the property being assigned, the risk continued upon the insurers as to the residue; that is, while there could be no recovery upon that portion of the property assigned, because it had been alienated, yet the assignee could recover for his remaining interest in the property, there having been no transfer or assignment with respect to that.

This decision is more to be commended than that of New York, and the only criticism that we apply to it is, that the stipulation against alienation is coupled with the corresponding positive obligation imposed upon all of the insured, as well as each, to preserve and protect the estate. This could not be complied with while one or more of the insured voluntarily abandon all right of possession, which puts it out of the power of such retiring partner to bestow his prudence, his care, in the preservation and protection of the property from loss, which is bargained for by the reasonable condition contained in the policy, and of which the company ought not to be deprived, without its consent, by voluntary act of the assured. This view of the case is presented in the second charge of the defendants, and was refused by the court.

We most respectfully invite the court to a careful review of the cases cited, with those before referred to, and we doubt not such result will be attained as shall satisfy the mind of the court, and a decision arrived at in which a united bench

shall concur in giving construction to the clause involved in this case.

*F. Charles Hume,* for appellee.

### On Rehearing.

Roberts, Chief Justice.—This case has been reargued with great research and ability by the counsel on both sides, and some new lights have been furnished in the additional authorities that have been produced. With that advantage, however, we are not prepared to say that the question at issue is much relieved from the difficulties growing out of a conflict of decision in other States, existing at the time our decision was made.

Upon the first argument of the case, the controversy seemed to turn mainly upon the question of whether or not the release by Henry Sampson to his copartners, of his interest in the partnership, was a violation of the condition in the policy of insurance, which read as follows, to wit: "This policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer, by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

In most of the cases referred to, there were stipulations in the policies against the assignment of the policy, and also against a transfer of the property. Notwithstanding that, it was held by the Court of Appeals in New York, followed by a few other cases, that a release by one partner of his interest in the partnership was not a violation of such stipulations. (Hoffman *v.* Ætna Fire Insurance Co., 32 N. Y., 416.)

The condition of this policy is so worded, as that it may be regarded as embracing both of these stipulations. Though, had it been deemed important, in view of the decisions, as well as of the arguments, it might have been more particularly examined into, and the conclusion have been reached

which was announced by Justice Ireland, in his separate opinion, that all of the terms of the condition related to the assignment of the policy. Upon further research, we have found that construction supported by other authority, in addition to that cited by him, in a case where the condition was similar to that in this case. (Wyman v. Wyman, 26 N. Y., 254.)

Such a construction seems to be equally reasonable, if not more so, than that which seemed to be taken for granted in the argument, and was followed, at least inferentially, in the opinion that was delivered in this case for the majority of the court.

Upon that construction, this case would be similar in its leading features to a case decided by the Supreme Court Commission in Ohio. (Reported in the American Law Register, October, 1876.) The policy in that case contained a stipulation against assignment of the policy, but none against a transfer of the property insured, without the consent of the insurer. This was noticed as an important omission in reference to the decisions in such cases, many of which had been made on policies having a stipulation against the transfer of the property, in some shape or other, "which enter largely into the discussion of the legal aspects of the case in the opinions of the courts deciding them." The opinion in that case is elaborate, and follows in its reasoning, in the main, the leading case of Hoffman v. Ætna Fire Insurance Co., 32 N. Y., 416, and concludes by a similar enumeration of the grounds for its construction of the contract embraced in such a policy of insurance, as follows, to wit: "The plaintiffs were parties to the contract; they continued to conduct the business contemplated by the policy; there was no change material to the risk, and none within the meaning of the clause under consideration. The policy was intended to protect the interest of each and all; and its language, fairly construed, is in harmony with that intent." In view of the grounds upon which both of these decisions are based, it is really not

very material whether the condition in the policy be con-
strued to prohibit a transfer of the property insured by "sale
or otherwise" or not, as they both hold that a release by one
partner of his interest in the firm to his copartners is neither
such an assignment of the policy nor transfer of the property
as is contemplated in the stipulations of that character. For,
considering the leading objects of the policy, in their applica-
tion to the ordinary course of business, such a release by one
partner is contemplated by the contracting parties as an
ordinary and probable event, during the continuance of the
policy, and is therefore, by implication, a part of the con-
tract, as much as though it was expressly permitted in it.

If this construction be correct, all of the difficulties pre-
sented in the cases decided adversely—that the two remaining
partners of the firm are not the proper parties to sue on the
contract of the policy; that they do not constitute the firm
whose goods were insured, and that their loss by fire was not
the loss of the firm insured—are fully obviated.

In consideration of the conflicting views which may be
plausibly urged on either side of this controverted question,
and of the conflicting decisions of the courts in different
States of the Union, we are not inclined to change the de-
cision of this case as formerly made, and it is, therefore,
made the final judgment of this court.

This case having been decided at a former term, at Gal-
veston, a motion for rehearing was made, taken under advise-
ment, and transferred to Austin, and the judgment therein
suspended until further order. The motion for rehearing was
granted, and the case sent back to Galveston, where it was
reargued, and the case was again taken under advisement
and transferred to Austin.

Being now decided, it is ordered that the suspension of
the judgment heretofore made be set aside, and the judgment
of affirmance heretofore rendered at Galveston be made
final, and mandate issue thereon, and that it be so entered

here and transmitted to Galveston, to be entered upon the minutes of the court as of the last term of that court.

[Justice MOORE dissenting.]