## REPUBLIC RECIPROCAL INS. ASS'N v. EWING et al.

### No. 902.

Court of Civil Appeals of Texas. Waco.

March 20, 1930.

Rehearing Denied April 24, 1930.

Bryan & Maxwell, of Waco, for appellant.

Trippet, Richey & Sheehy, of Waco, for appellees.

GALLAGHER, C. J.

This appeal is prosecuted by Republic Reciprocal Insurance Association, organized and acting under chapter 20 of title 78 of our Revised Statutes, and hereinafter called appellant, from a judgment in favor of F. G. Ewing, hereinafter called appellee, and a number of coappellees not necessary to mention by name, awarding appellees compensation for the death of N. G. Ewing.

The principal issue in this case, and the only one necessary to discuss, is whether the appellee F. G. Ewing, by whom the deceased N. G. Ewing was employed at the time of his death, was a subscriber, and appellant, his insurance carrier, within the meaning of the Workmen's Compensation Act at that time. The case was tried to the court. The testimony on such issue was sharply conflicting. The trial court accepted appellees' contention as to the facts and rendered judgment in accordance therewith. The findings of the court in favor of appellees being general, every issuable fact must be considered found in their favor if there is any evidence to support such a finding. In passing upon the sufficiency of the evidence to sustain each such finding, we must view the same in the light most favorable thereto, rejecting all evidence favorable to the opposite contention and considering only the facts and circumstances which tend to sustain such finding. Hines v. Kansas City Life Insurance Co. (Tex. Civ. App.) 260 S. W. 688, 690, pars. 2 and 3, and authorities there cited. The facts will be recited in accordance with such rule and conflicts in the testimony will be disregarded.

The deceased employee was injured while working at a gin, commonly known as the Willow Grove Gin. Said gin was operated during a part of the year 1927 and had been operated for several years prior thereto by appellee F. W. Ewing. On July 15, 1927, appellee, at the instance of A. B. Shoemake, appellant's general attorney, executed and delivered to him for appellant a formal application for a workmen's compensation and public liability policy to protect him in the operation of said gin. A policy, dated August 3, 1927, and reciting that it was in the form prescribed by the state insurance commission under the authority vested in it by law, was issued on said application by said Shoemake, acting for appellant, and delivered to appellee. Some time thereafter appellee sold and transferred said gin to his three sons, one of whom was N. G. Ewing, for whose death compensation was awarded in this case. They conducted their business under the firm name

of Ewing Bros. When appellant's agent Lindloff called on appellee in the fall of said year to collect the premium on said policy, appellee informed him of such sale and transfer and referred him to said firm, who paid the premium on said policy. Appellee assisted his sons in the management of their business affairs. Later, at the solicitation of said agent, appellee in behalf of said firm and in its name executed and delivered to him a formal application for a similar policy for the protection of said firm. He at the same time executed and delivered a note for the premium on said policy and signed the same, "Ewing Bros., by F. G. Ewing." Said note was made due and payable on or before September 15, 1928. Said policy, at the suggestion of said agent, was to be effective January 1, 1928, and to continue in force, unless terminated in accordance with provisions therein contained, during that calendar year. Said policy was duly issued and delivered.

The Citizens' National Bank of Waco held a deed of trust on said gin and the land on which same was situated. Said property was sold under the same on May 1, 1928, and said bank became the purchaser at such sale. Said bank thereafter entered into an agreement with appellee F. G. Ewing for the sale of said property to him and for the operation of said gin by him until such sale and transfer could be effected. Shortly thereafter Mr. Schuler, cashier of said bank, called at appellant's office and found Mr. Shoemake out, but he at that time advised the lady in charge of the office that the bank had purchased the property and that he wanted an indorsement put on the workmen's compensation policy appellant was carrying, protecting the bank as owner of the property. Thereafter, on October 5, 1928, appellant's agent Lindloff called on appellee F. G. Ewing to collect the premium note given for the Ewing Bros. policy. Appellee was then operating the gin in his own name and his three sons, who had formerly constituted the firm of Ewing Bros., were then employed by him to aid in such operation. Appellee told Lindloff at the time that there had been a change of ownership and that he was then running the gin himself, and gave a check for the premium due. He asked Lindloff to protect him under said policy as the new owner of the business, which he promised to do. Appellee relied on such promise in making such payment. He was a farmer and was wholly unacquainted with the technical requirements of reciprocal insurance. Lindloff at the same time promised to protect appellee during the repair season in the spring of the ensuing year. The premium collected was for the year 1928 and for an extension of the policy to cover such repair season. Appellee paid said premium by his own check and noted thereon that it was "for compensation." Said check was delivered to appellant by Lindloff and promptly cashed by

it. Lindloff's powers were limited. He collected premiums, took applications for policies, received notices of change of ownership or change in business, and took applications on such changes. He had, however, no authority to contract or issue policies. There is no testimony that he ever reported to appellant the transaction between him and appellee. He in fact denied having any such transaction, except the receipt of such check. On October 22, 1928, Mr. Schuler saw Mr. Shoemake in person and told him that the bank then owned the property and that it had agreed with appellee F. G. Ewing to operate the gin through the coming season, and that said appellee was then running the gin and was the employer at that time. He again asked that the compensation policy carried by appellant be fixed or that a rider be placed thereon so as to protect the bank as the owner of the property. Such a rider or indorsement appears to have been theretofore issued by appellant. The same was transmitted to the bank with a letter signed in the name of appellant, by Mr. Shoemake as manager, which letter was as follows: "In reference to our conversation of even date regarding the bank's coverage on the *Ewing Bros.* gin at Willow Grove, we enclose herewith endorsement on *Mr. Ewing's* operations and your protection at Speegleville." (Italics ours.) The policy issued to appellee in 1927 and the one issued to Ewing Bros. January 1, 1928, were in substantially the same form. Each of said policies contained a blank space, with a statement in that connection that the same was for the attachment of endorsements. Each of said policies contained the following clause: "No assignment of interest under this policy shall bind the carrier, unless the consent of the attorney shall be endorsed hereon."

Each of the same also contained the following blank form:

"Assignment of Contract.

"For value received, ——— hereby assign and transfer to ———, ——— right, title and interest in and to the within contract, subject to all the conditions thereof, and the said assignee, by accepting this assignment, assumes all the liabilities of the assignor.
"———————

"Signature of Assignor
"Republic Reciprocal
    Insurance Association
"———————

"Attorney.
"———, 19——
"Assented and Recorded
"Waco, Texas, ———, 19——"

Mr. Shoemake testified that policies were never transferred by indorsement and claimed that the execution of a written application was required by him in every case.

N. G. Ewing, on November 7, 1928, while an employee of appellant assisting in operating said gin, sustained injuries in the course of his employment which resulted in his death.

The policy issued to Ewing Bros. by appellant and the application therefor constituted the contract between them. Such contract shows by its terms that the possibility of an assignment thereof by the insured was contemplated and provided for, subject only to the consent of appellant. The right of Ewing Bros. to assign said policy and the right of appellee to become the assignee thereof and thereby secure for himself the benefits accruing therefrom, so contemplated and provided for, were of substantial value to them, respectively. Said policy was turned over to appellee before the premium thereon became due. He paid such premium to appellant for the purpose of securing for himself the protection promised therein. Notwithstanding Lindloff was not authorized to contract, he was authorized to collect premiums, to receive notices of change of ownership or manner of conducting the business of appellant's policyholders, and applications for transfer of the protection afforded by its policies. Whatever information he acquired in the discharge of such duties was acquired in the course of his employment, and such information was legally imputed to appellant as his principal, regardless of whether actually communicated to it or not. Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435, 436, par. 2 (writ refused), and authorities there cited. See, in this connection, Sovereign Camp, W. O. W., v. Hines (Tex. Civ. App.) 273 S. W. 927, 929, 930, par. 2, and authorities there cited. Appellant, according to the testimony of Mr. Schuler, knew at the time it cashed said check that the bank was the owner of the property, and it had recognized such ownership by executing and delivering an indorsement to be attached to said policy extending its protection to the bank. Appellant also knew that said gin was then being operated by appellee F. G. Ewing, and not by the firm of Ewing Bros. Knowledge of the fact that said policy was in the hands of appellee F. G. Ewing, that he was tendering the premium thereon and depending thereon for protection, was imputed to it at the time it cashed said check and retained as its own the proceeds thereof. Appellant could not, with such knowledge, actual and imputed, accept said check and appropriate the proceeds thereof and deny that it assented to the transfer or assignment of said policy from Ewing Bros. to appellee. Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S. W. 456, 457, 458, par. 6, and authorities there cited, 288 S. W. 115, 47 A. L. R. 876; Southern Underwriters v. Jones, supra, 13 S.W.(2d) page 436, par. 1, and authorities there cited; Law v. State Mutual Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539, par. 1, and authority there cited; National Fire Ins. Co. v. Carter (Tex. Com. App.) 257 S. W. 531, 532, 533, par. 2; Hamilton v. Fireman's Fund Ins. Co. (Tex. Civ. App.) 177 S. W. 173, 175, par. 5; Fire Association of Philadelphia v. Laning (Tex. Civ. App.) 31 S. W. 681, 683, 684. Such assent was not rendered ineffectual by the fact that it was not in writing and indorsed on said policy or attached thereto. Morrison v. Insurance Co., 69 Tex. 353, 363, 364, 6 S. W. 605, 5 Am. St. Rep. 63; Brittish America Assur. Co. v. Francisco, 58 Tex. Civ. App. 75, 123 S. W. 1144, 1147; Mechanics' & Traders' Ins. Co. v. Dalton (Tex. Civ. App.) 189 S. W. 771, 772, par. 5, and authorities there cited; United States Fidelity & Guaranty Co. v. Taylor (Tex. Civ. App.) 11 S.W.(2d) 340, par. 1. Since the death of the employee occurred during the continuance of the original policy, we need not consider whether the promised extension of such policy to cover the repair season the following spring was validated by acceptance of such premium or not.

The judgment of the trial court is affirmed.