## FEDERAL UNDERWRITERS EXCHANGE v. WHEELER.

### No. 3161.

Court of Civil Appeals of Texas. Beaumont.

July 10, 1937.

Rehearing Denied Oct. 6, 1937.

Collins & Collins, of Lufkin, and Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Adams & McAlister, of Nacogdoches, for defendant in error.

COMBS, Justice.

This is a compensation case.

While bucking slabs in the Carriker sawmill in the town of Nacogdoches, the appellee, J. L. Wheeler, who was plaintiff below, suffered a heatstroke. He alleged that he was totally and permanently incapacitated from the injury received in the course of his employment. The jury so found, and the sufficiency of the evidence to support the finding is not challenged. The trial court entered judgment in plaintiff's favor for the lump sum of $2,415.10, the statutory discount being allowed for the unmatured payments.

By several assignments the appellant, which was defendant in the court below, contends that its motion for instructed verdict should have been sustained for the reason, as it contends, its policy of insurance did not cover the employees of the Carriker mill at the time of Wheeler's injury. The facts which form the basis of the contention are: On March 4, 1934, the defendant issued its policy of compensation insurance to A. J. Carriker covering the employees of the sawmill owned and operated by Carriker in the town of Nacogdoches. A. J. Carriker died July 11, 1934. By the terms of his will, which was probated in August, 1934, all of his property was devised to his wife, Myrtle Carriker, who was named independent executrix. It appears that operation of the mill was continued, and in March, 1935, the expiration date of the policy, eight months after his death, the policy was renewed to A. J. Carriker. On August 9, 1935, within the term of the renewed policy, plaintiff sustained his injury while in the course of his employment at the Carriker mill. Defendant during the trial introduced the will of A. J. Carriker and the order of the probate court probating it. Plaintiff was permitted to file a trial amendment wherein he pleaded waiver and estoppel. Proof was made to the effect, and it was not denied, that the defendant collected insurance premiums monthly on the policy after the death of A. J. Carriker and up until December 31, 1936; that its engineer or inspector visited the Carriker mill at least three and possibly four times after the death of A. J. Carriker and made

inspection of the mill. It was also shown that claims of three or four of the employees of the Carriker mill were investigated and compensation payments made under the policy for injuries occurring after the death of A. J. Carriker. The defendant's general manager denied that he had actual knowledge of the death of A. J. Carriker until shortly after the injury of the plaintiff Wheeler, but admitted that he learned of it within thirty or sixty days after Wheeler's injury and he admitted that the company continued to receive and retain the premiums on the insurance policy up until December 31, 1936, when the policy was canceled. It was also shown that one employee was injured a few days after Wheeler was injured and that his claim for compensation was recognized and compensation payments made to him around Christmastime 1936.

As stated above, judgment was for the plaintiff on the findings of the jury of total and permanent incapacity, and the insurance company has appealed.

The appellant contends that its policy of insurance did not cover the employees of the Carriker mill at the time of appellee's injury. This contention is without merit for several reasons. The first, and we think all-sufficient one, is based upon a provision of the compensation insurance policy in part as follows: "The obligations and promises of the carrier to the employee or his dependents as set forth in this paragraph shall not be affected by the failure of this Subscriber to do or refrain from doing any act required by this contract; nor by default of this Subscriber after the accident the making or deposits or in the giving of any notice required by the contract or otherwise; *nor by the death, insolvency, bankruptcy, legal incapacity or inability of this Subscriber, nor by any proceeding against him as the result of which the conduct of this Subscriber's business may be and continue to be in charge of an executor, administrator, receiver, trustee, assignee or other-person.*" (Italics ours.)

■ The appellant itself made proof of A. J. Carriker's death and introduced in evidence his will leaving his property, including the mill in question, to his widow and naming her independent executrix. In so far as shown by the record, the mill was being operated by Mrs. Carriker as executrix under the will at the time of the appellee's injury. Defendant's general manager testified that after the death of A. J. Carriker the premium payments were perhaps made by checks of the Carriker estate, thus the facts put the continued operation of the mill after the death of A. J. Carriker squarely within the above-quoted provision of the policy extending the protection of the policy to the employees while the mill was being operated by the executrix.

■ Second, the will of A. J. Carriker operated as an assignment to the widow of his interest in the insurance contract, and, by continuing to collect the premiums and treat the contract as valid with knowledge of A. J. Carriker's death, the appellant ratified the assignment. Republic Reciprocal Ins. Ass'n v. Ewing (Tex.Civ.App.) 27 S. W.(2d) 270 (writ refused).

■ In collecting and retaining the premiums on the policy and claiming benefits under it, and by adjusting claims and recognizing the validity of it with full knowledge of the change of the status in ownership of the Carriker mill, the appellant waived any right it may have had to treat the policy as terminated by the death of A. J. Carriker. It was not necessary for the plaintiff to show the elements of estoppel in order to establish that defendant had waived forfeiture of the policy. The principle involved is thoroughly discussed in Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S.W. 1152, 152 S.W. 625.

■■ In submitting the case to the jury, the trial court submitted issues as to total incapacity and partial incapacity and permanent incapacity and temporary incapacity. The issues were not alternatively submitted, but the jury, in returning the answers into court, did not answer the issues pertaining to temporary and partial incapacity. The appellant insists that it was entitled to have the jury answer said issues and that the verdict as returned was incomplete and no judgment could be entered on it. The contention is overruled. The evidence did not raise any issues of temporary and partial incapacity as defenses to plaintiff's claim for compensation. Plaintiff's testimony tended to show that he was totally and permanently incapacitated from heatstroke. The theory of the defense was that his condition was the result of disease. One of the medical witnesses for the defendant gave it as his opinion that the plaintiff's condition was due to malaria and pyorrhea; another that his condition indicated tuberculosis. No specific tests were made

for these diseases. Those two witnesses testified, incidentally, that malaria, pyorrhea, and tuberculosis can be alleviated or cured by proper treatment. Other than that no attempt was made by the defendant to prove that the plaintiff's incapacity was not total and permanent. In fact, defendant's own medical witnesses admitted that, if the condition was due to heatstroke, it was of a permanent nature. Issues embodying the defendant's defense that plaintiff's condition was due to tuberculosis, pyorrhea, or malaria were appropriately submitted to the jury, in response to which the jury found that the plaintiff's condition was not caused by either of said diseases or a combination of them, and the sufficiency of the evidence to support the findings is not challenged. Had the jury found for the defendant on either of these issues, it would have defeated recovery completely. Defendant's theory of defense, therefore, presented no issue of temporary or partial incapacity, but one of complete defense. No defensive issues of temporary and partial incapacity having been raised by the evidence, they should not have been submitted. Consolidated Casualty Ins. Co. v. Fortenberry (Tex.Civ.App.) 103 S.W.(2d) 1049; Traders & General Ins. Co. v. Babb (Tex.Civ.App.) 83 S.W.(2d) 778.

Complaint is made of the admission of the testimony of Dr. George H. Turner as to his opinion of the cause of plaintiff's condition. Dr. Turner, after qualifying as an expert, and after stating that he had examined the plaintiff about ten days before the trial, and after testifying in detail as to his clinical findings of the plaintiff's condition, was asked by plaintiff's counsel: "Q. Could his condition that you found have been caused by heatstroke or heat exhaustion?" To which defendant's counsel objected: "We object to that on the ground that this witness if testifying and the opinion of this witness is predicated upon self serving, hearsay declarations of the plaintiff—predicated upon the history and upon hearsay statements—self serving statements of the plaintiff." Objection being overruled, the question was repeated, to which the doctor answered: "It is possible—I think so—from that sick stomach." Again he was asked: "Doctor, taking everything he gave you as absolutely true, and what you found from your examination, what would you say was the cause of this man's condition today?" To which the same objection was renewed and overruled, and Dr. Turner

answered: "Not knowing anything about this man's case, I would say from the symptoms he gave it could cause those symptoms. I examined the patient as I said—and the clinical history while given other causes could produce the same things." Upon cross-examination defendant's counsel developed the fact that Dr. Turner's answers, as set out above, were based in part upon what the plaintiff told him as to his case history and subjective symptoms. The defendant then made a motion to strike out Dr. Turner's testimony on the ground that the examination of the plaintiff was made for the purpose of qualifying him to testify as a witness in the case. Dr. Turner did not state and was not asked what the purpose of his examination was. It would appear from the plaintiff's testimony, however, that he intended to use Dr. Turner as a witness.

The rule contended for by the appellant was recognized by this court in the recent case of Republic Underwriters v. John D. Lewis, 106 S.W.(2d) 1113. Chief Justice Walker, in his opinion in that case, discussed the rule and reviewed the authorities. But on the record before us the facts do not invoke the rule which renders the opinion of a doctor inadmissible when it is based upon self-serving statements made by a party for the purpose of qualifying the doctor to testify as a witness. The statement of facts reveals that upon cross-examination defendant's counsel went into the same matter. And in response to questions propounded by the defendant's counsel Dr. Turner related the case history stated to him by the plaintiff and the subjective symptoms considered by him. The case history so stated by Dr. Turner is the same as that testified to by the plaintiff and other witnesses upon the trial, and the subjective symptoms shown to have been considered are the same as those testified to by the plaintiff himself. In fact, defendant's counsel elicited the same opinion from Dr. Turner in regard to the possible cause of plaintiff's condition that he had given on direct examination. Such being the case, it is our view that it was not error for Dr. Turner to express his opinion that plaintiff's condition could have been caused by heatstroke when it is thus made to appear that his opinion was based upon a statement of case history and subjective symptoms which were in accord with the facts testified to upon the trial. According to all of the authorities, it would have been permissible to

have embodied them in a hypothetical question. And, while it would, no doubt, have been the better practice for counsel to have elicited the opinion in that manner, still the court's failure to strike out Dr. Turner's testimony could not have been prejudicial to the defendant.

Finding no error, the judgment of the trial court is affirmed.