## SOUTHERN UNDERWRITERS v.
## MAHAN et al.
### No. 5363.

Court of Civil Appeals of Texas.
Texarkana.

March 24, 1939.

Rehearing Denied April 6, 1939.

Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Caldwell, Baker & Jordan, Gillen & Francis, and Jim O. Bean, all of Dallas, for defendant in error.

JOHNSON, Chief Justice.

This suit was filed by D. C. Mahan against the Southern Underwriters to set aside an award of the Industrial Accident Board and to recover compensation on account of injuries sustained in the course of his employment with T. J. Northrup. Trial to a jury resulted in a verdict and judgment for plaintiff. The Southern Underwriters by writ of error have perfected their appeal to this court.

The issues presented are referable to two questions: (1) Did the mere withdrawal (prior to Mahan's injury) of one of the partners, Jimmie Murphy, from the partnership business forfeit the policy of workman's compensation insurance issued by appellant to T. J. Northrup and Jimmie Murphy—a partnership—and relieve appellant of liability to the employees of the remaining partner, T. J. Northrup, who continued to operate the business covered by the policy? (2) Had appellant by its conduct waived such forfeiture, if any?

With respect to the first question, the record shows that on April 24, 1935, appellant issued its policy of workman's compensation insurance covering the employees of T. J. Northrup and Jimmie Murphy, a partnership, for the contract period on one year, from April 18, 1935, to April 18, 1936. The business operations covered by the contract was that of erecting and dismantling oil well rigs and derricks. T. J. Northrup was manager and in control of the business. On or about April 20, 1935, Jimmie Murphy withdrew from the partnership and T. J. Northrup continued to operate the business as before. On May 21, 1935, after

Murphy's withdrawal from the partnership, appellee was injured in the course of his employment with Northrup.

█ The policy contained the following provision: "No assignment of interest under this contract shall bind the carrier unless the consent of the attorney shall be endorsed thereon." It is contended in substance that Murphy's withdrawal from the partnership was in contravention of the above-quoted proviso and had the effect of relieving the appellant of liability for injuries sustained by employees, occurring after Murphy's withdrawal and before the taking effect of the subsequent endorsement on the policy of its consent thereto. Traders' & General Ins. Co. v. Emmert, Tex.Civ.App., 76 S.W.2d 208, writ refused is to the effect that a sale by one of the partners named as subscriber in a policy of workman's compensation insurance of his interest in the partnership business to a third party, not a subscriber but a stranger to the insurance contract, violated such a provision against the assignment of interest, and avoided the policy. But we do not think the mere withdrawal of one of the partners from the partnership, and the continuation of the business by the other subscribing partner, can reasonably be considered as violating the letter or the spirit of the proviso; for there has been no "assignment of interest under the contract," nor has there been the intervention of any third party with whom the insurer has not already contracted as a subscriber. In Texas B. & I. Co. v. Cohen, 47 Tex. 406, 26 Am.Rep. 298, our Supreme Court construed a provision against assignment of interest contained in a fire insurance policy, worded in language of less ambiguity than the proviso here under consideration, and expressly providing that its breach should forfeit the policy. In that case the Supreme Court held that withdrawal of one of the partners from the partnership and the sale of his interest in the partnership business to his copartners did not constitute such a change in the persons to, or property covered by, the contract as would avoid the policy, and that such a provision in the policy "must be understood as intended to prevent only the sale and transfer of the proprietary interest of those with whom the insurers contracted; to others, with whom they had not consented to contract." The court further quoted with approval the following: "The plaintiffs were parties to the contract made with the defendant. They were conducting the business contemplated by the terms of the policy. The insurance was intended to cover the mercantile stock, of which the assured were proprietors, stored, from time to time, in the building in which that business was conducted. There was no substantial change material to the risk, and clearly none within the intent of the proviso. Each member of a partnership firm, as Lord Hardwick said, is seized, per my et per tout, of the common stock and effects." West v. Skip, 1 Ves.Sr., 242.

"This interest of each and all, the policy in question was designed to protect; and its language, fairly construed, is in harmony with this intent. There is no reason why the full measure of agreed indemnity should be withheld from the plaintiffs, who were owners at the date of the insurance, and sole owners at the time of the loss." Hoffman v. Aetna Fire Ins. Co., 32 N.Y. 405, 416, 88 Am.Dec. 337.

█ The reasoning above quoted is equally, if not more applicable, to the circumstances here presented; for the mere withdrawal of Murphy violated no letter of the provision, and no reason has been advanced, and we see none, for holding that it violated the purpose of the provision. There was no addition made to the personnel of the subscriber. The risk based upon the nature of the business being operated is not claimed to have been changed or increased. The subject matter of the policy, the employees doing the work of the business, remained the same. We see no reason why a provision against assignment of interest when contained in a policy of workman's compensation insurance should be given a different meaning than when contained in a fire insurance policy. It seems reasonable to conclude that by use of the provision, unaccompanied by any expression to the contrary, it was intended to carry a like meaning and effect as that previously given and applied by our Supreme Court in construction of similar provisions appearing in insurance contracts. Philadelphia Underwriters' Agency v. Moore, Tex.Com. App., 229 S.W. 490, 491. It will be noted further that when the provision as worded in appellant's contract is invoked to work a forfeiture of the policy by reason of the mere withdrawal of one of the part-

ners from the business, the language of the provision does not include the act complained of. The expressed prohibition is against "assignment of interest" only. If it were intended to include the act of withdrawal of one of the partners from the business, the language of the provision is not free from ambiguity; and to imply such an intention by construction would violate the general rule, restated by Judge Taylor in Philadelphia Underwriters Agency v. Moore, supra, as follows: "The Supreme Court and other courts of the state have not been reluctant to view that rule of the law which construes provisions of forfeiture with strictness, and which requires clear and unambiguous language, and acts plainly within such language, before a forfeiture is enforced, as wise and just. The rule of strict construction against the insurer and in favor of the insured, especially where a question of forfeiture is involved, has been consistently followed by the Supreme Court." See 24 Tex.Jur. 702, Sec. 27, and authorities there cited.

The rule adopted by our Supreme Court in Texas B. & I. Co. v. Cohen, supra, to the effect that an alienation condition is not violated by a sale of one of the partners of his interest in the partnership business, and his withdrawal from the partnership, without the introduction of a new party with whom the insurer has not contracted, has since been followed. German Alliance Ins. Co. v. Ft. Worth Grain & Elevator Co., Tex.Civ.App., 257 S.W. 273; Germania Fire Ins. Co. v. Ft. Worth Grain & Elevator Co., Tex.Civ. App., 271 S.W. 256. The rule is in accord with the great weight of authority. 26 Cor.Jur. 236; 14 R.C.L. 1121; Couch on Insurance, Sec. 1017; Vance on Law of Insurance, p. 270. The rule has been specifically applied to a policy of workman's compensation insurance by the Supreme Court of Tennessee in the case of U. S. Fidelity & Guaranty Co. v. Booth, 164 Tenn. 41, 45 S.W.2d 1075, 1077, from which we quote the following: "The contract of insurance was entered into by the parties in recognition and furtherance of the policy of the law to make certain the payment of awards of compensation to injured employees. The contract should be construed with due regard to this purpose, especially in an action by the injured employee and his dependents. It being a primary purpose of the contract to protect the employees of the business of the partnership, we can find no justification for holding that this protection was annulled and avoided by the mere withdrawal of one of the partners. Neither the essence of the contract nor the degree nor extent of the liability of the insurer was affected thereby."

We do not think that the mere withdrawal of Jimmie Murphy from the business operated by T. J. Northrup and Jimmie Murphy avoided the policy as to the employees of T. J. Northrup, the remaining subscriber who continued to operate the business.

■■ With respect to the second question presented, that of waiver, it appears that in his amended petition appellee alleged in substance that after Murphy's withdrawal from the partnership and after appellant knew or had notice of his withdrawal, appellant had recognized the policy as being in effect at the time of appellee's injury, May 21, 1935, and had by its conduct subsequent thereto waived its right, if any, to declare the policy forfeited by reason of Murphy's withdrawal. The issues on the plea of waiver were all answered by the jury in favor of appellee. The plea is grounded in the following facts and circumstances. After Murphy's withdrawal and before appellee was injured, appellant on May 1st or May 5th audited the payroll account of the business. continued to be operated by Northrup, for the purpose of assessing and collecting such premium, if any, as had been earned under the policy from the date of its issuance to May 1st. The audit was made by appellant's agent, Oscar L. Rea. At that time Northrup informed Rea of Murphy's withdrawal. The audit included the payroll of the employees of T. J. Northrup and Jimmie Murphy from the date of the policy to the date of Murphy's withdrawal and included the payroll of the employees of T. J. Northrup after Murphy's withdrawal and to the 1st of May. The total amount of premium charged by Rea as having been earned under the policy by virtue of such payrolls and covering such period of time amounted to $157 or $167, for which Rea accepted T. J. Northrup's check. It is contended that Rea had no authority to receive the notice of Murphy's withdrawal and that such notice could not, therefore, be imputed to appellant. The policy contained the following provision: "No condition or provision of this contract shall be waived, extended, modified

or altered by anyone; unless by written consent of the attorney.; nor shall notice to any representative, nor shall knowledge possessed by any representative or by any other person, be held to effect a waiver or change in this contract, or in any part of it."

Testimony, stipulated in the record, of George R. Christy, President of Southern Underwriters Corporation, which is attorney in fact for appellant, the Southern Underwriters, is that "said Rea had no authority to issue or endorse any policy of insurance nor to bind the company upon any risk." Appellant's contract employing Rea was not introduced in evidence, nor did Rea testify on trial of the case, nor is the limitation of his authority otherwise shown than that he was not authorized "to issue or endorse any policy of insurance or bind the company upon any risk." But the issue of waiver is not to hold appellant upon any policy, endorsement or binder issued or executed by Rea, but is to effect appellant with notice of Murphy's withdrawal received by Rea in the alleged course of his employment. The evidence is sufficient to raise the inference that Rea's duties were not restricted to that of a mere soliciting agent. In addition to soliciting the business, receiving applications, delivering policies, and collecting the deposit premium, he audited the payroll account of the subscriber and determined for the insurer what amount of premium, if any, the policy had earned, and upon such determination assessed and collected the amount of premium, if any, earned under the policy; that he received and transmitted notices of divers nature, including notice of change of ownership or personnel of subscriber, and application for transfer of the protection afforded. It has been held that notice of facts acquired by the agent in the discharge of and relating to such duties is legally imputed to the insurer. Republic Reciprocal Ins. Ass'n v. Ewing, Tex.Civ.App., 27 S. W.2d 270, writ refused; Zurich General Accident & Liability Ins. Co. v. Ft. Worth Laundry Co., Tex.Civ.App., 58 S.W.2d 1058. It seems to us that notice of a fact that had forfeited the policy and ceased its earning of premiums (as appellant contends that Murphy's withdrawal did) would properly be a matter to be considered by an agent whose duty it was to determine whether the policy had earned any premium, and the amount thereof, and

that such notice should be regarded as having been received by the agent in the course of his employment. But in this case the plea of waiver is not entirely dependent upon imputing to appellant the notice received by its agent; for it further appears that Rea did in fact transmit to appellant the notice of Murphy's withdrawal from the partnership, by a letter reading: "Please have these policies endorsed to read T. J. Northrup (individual) only, as Mr. Murphy is no longer interested. Oscar L. Rea." The letter does not appear to be dated, but is stamped on the reverse side: "Received May 23, 1935, The Southern Underwriters." This was about twenty days after Rea had received notice of Murphy's withdrawal, and two days after appellee had received his injury, and one day after Rea had been notified of appellee's injury. On May 24, 1935, appellant issued and returned to Rea an endorsement to be attached to the policy in terms as follows:

"It is hereby understood and agreed that Item No. One of the policy to which this endorsement is attached is amended as follows: 'T. J. Northrup—operating as an Individual.'

"All other terms and agreements of the policy remain unchanged.

"Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the above mentioned policy other than above stated.

"This endorsement shall take effect May 23rd, 1935 12:01 o'clock A. D. Standard time at assured's address, and shall terminate simultaneously with said policy.

"Dated at Houston, Texas, this 24th day of May, 1925."

Appellee D. C. Mahan was injured May 21st. He testified: "Yes, sir, the next day after I was hurt, I reported my accident to Oscar L. Rea, how it happened, and where it happened—I told him I was working for T. J. Northrup—he made the report on it that day—I do not know what he did with the report—the next time I was up there was when the Board papers came in—he filled them in."

It is stipulated in the record that "it was reported to The Southern Underwriters on May 27, 1935, that D. C. Mahan received an injury on May 21, 1935, while he was an employee of T. J. Northrup and

Jimmie Murphy, a partnership." It is further shown that T. J. Northrup, the subscriber, died May 27, 1935, thus terminating the business and the policy. About June 11, 1935, after Northrup's death, Rea again audited the payroll account of the business, in final determination of the premiums earned under the policy, and in final settlement with Northrup's widow. After making that audit Rea deducted from the original $250 deposit the amount of premium which he determined and assessed as having been earned since the last audit, and issued T. J. Northrup's widow his check for the amount remaining of said $250. So, it appears that after Murphy's withdrawal, and after notice thereof had been given to appellant's agent, Rea, and after such notice had in fact been transmitted by Rea to appellant, and after appellant had also received notice of appellee's injury, premiums were claimed and collected and retained in final settlement of the policy on the basis that it had continuously been in force from the time of its issuance to the time of its termination by the death of the remaining subscriber, T. J. Northrup. It further appears that after receiving report of appellee's claim, appellant in addition to furnishing him with medical attention, began paying him compensation at the rate of $20 per week. Appellant's initial report to the Industrial Accident Board, among other facts, reflects the following pertinent information: "Name of Claimant: D. C. Mahan. Name of Subscriber: T. J. Northrup. Date of Injury: May 21, 1925." The report was received by the Board June 15, 1935. At a later date a Mr. Hitzfield, an adjuster for appellant, obtained a sworn report of the facts with respect to appellee's claim from appellee in the court house at Henderson, and on that occasion gave appellee a check for $80 with "The Southern Underwriters' written on the check, for four weeks' compensation in arrears. Thereafter appellant continued to pay appellee compensation at the rate of $20 per week until December 15, 1935, in all for a period of twenty-eight weeks. Among the facts found by the jury are: "That on or about May 1, 1935, T. J. Northrup notified Oscar L. Rea that Jimmie Murphy had withdrawn from the business and that thereafter Northrup was operating said business alone; that Rea had authority from The Southern Underwriters to receive such notice; that appellant paid appellee compensation on account of his injury received May 21, 1935, as an employee of T. J. Northrup; and that in paying appellee such compensation for twenty-eight weeks following his injury, appellant intended by such act to declare that said policy of insurance was in full force and effect on the employees of T. J. Northrup at the time of Mahan's injury, May 21, 1935." If the withdrawal of Murphy had constituted a forfeiture of the policy, we think the facts and circumstances above shown evidenced an intention on the part of appellant not to insist upon such forfeiture, and constituted a waiver of its right to do so. Southern Underwriters v. Shipman, Tex.Civ.App., 97 S.W.2d 370; Federal Underwriters Exchange v. Wheeler, Tex. Civ.App., 108 S.W.2d 922; Fidelity Lloyds of America v. Geddie, 116 Tex. 656, 296 S.W. 500.

The judgment of the trial court is affirmed.