## AMERICAN INS. UNION v. MONK.
### (No. 7346.)

Court of Civil Appeals of Texas. Austin.
April 10, 1929.

Marvin Roberson, of Fort Worth, for appellant.

W. R. Bishop and Sam Holland, both of Athens, for appellee.

BLAIR, J. Appellee sued appellant upon an insurance certificate issued by the Fort Worth Mutual Benevolent Association, which insured the life of Sarah E. Monk, mother of appellee, for $1,500, liability for the payment of which the appellant assumed by a merger contract, and on a trial to the court without a jury recovered judgment for that amount; hence this appeal.

The first two assignments of error are that "the court erred in overruling," and that "it was fundamental error for the court to overrule, defendant's plea in abatement." In substance the plea alleged that the constitution and by-laws of appellant, a fraternal benefit society, required appellee to file his claim and proofs of death with and for the approval of its "national board of directors at Co-

lumbus, Ohio," and to appeal to its "national court" at the same place from any order of said board of directors refusing to approve and allow his claim before he could take same into court for redress, and that appellee had failed to comply with these prerequisites to suit. In answer appellee alleged and proved that he filed his claim and proofs of death with appellant's national board of directors as provided by its constitution and by-laws; that the board of directors approved and ordered the claim paid; that appellant's cashier notified appellee that his claim had been approved and allowed and would be paid, but that appellant refused to pay same; and appellee's suit is in the alternative to recover on this adjustment of his claim.

Appellee having prevailed before the board of directors, who approved and allowed his claim, he was not required to appeal to the national court. It was also appellant's duty to pay the claim under the adjustment, and, having failed to do so, appellee was entitled to his redress in court, and if, as contended by appellant, the claim was never presented to its board of directors for approval and allowance, then by the failure of its own agents to present the claim and proofs of death to the board, and by authorizing its cashier to notify appellee that it had been approved and allowed by the directors, and that it would be paid, appellant has clearly waived these prerequisites to suit.

Appellant interposed the special plea that in her application for the insurance Sarah E. Monk made certain false and untrue statements which under provision of the application rendered void and of no effect the certificate issued. Appellee denied that the statements were false and untrue and pleaded that appellant waived and was estopped to raise the issues because of the adjustment of the claim, and because of certain acts of appellant's agent taking the application, which will be discussed later. Appellant answered that it knew nothing of the false statements when the alleged adjustment was made, but discovered them later. The alleged untrue statements are as follows:

1. That Mrs. Monk was born in 1872, when in fact she was born in 1869.

2. That at the time of making the application she was in good health.

3. That she had not theretofore had any disease of the heart.

4. That she had never been rejected for life insurance.

In reference to the first statement the proof of death made by appellee shows that Mrs. Monk was born in 1869. The application shows 1872. Appellee testified that he did not know the year of her birth, but guessed at it when he made the proof of death. There is no evidence to show that she was not born in 1872, as stated in the application. The question was therefore one for the trial court to determine. The record also shows that appellant had the application showing the birth date to be 1872, and the proof of death by appellee showing the birth date to be 1869, when it made the adjustment and promised to pay the claim. Appellee therefore established to the satisfaction of the trial court his plea of waiver and estoppel on this issue.

In reference to the second statement that Mrs. Monk was in good health when she made the application, the evidence shows that she was, and the finding of the trial court concludes the issue. Her son testified that she was in good health, and the evidence shows that it was twelve or fourteen months thereafter before a doctor was called.

In reference to the statement that Mrs. Monk had not theretofore had any disease of the heart, Dr. King, a witness for appellant, testified that in June, 1925, prior to her application on July 15, 1925, he attended her and that she was suffering with palpitation of the heart caused by a disease of the stomach, and that this "disease was of another organ and not of the heart." He further testified that "the fact she was sick in June, the first of June, when I attended her, would be no indication that her health was not good on the 18th of July, when she made application for insurance." Mrs. Monk never suffered thereafter with heart disease, and did not die of heart disease, but of another disease, contracted long after she made application for the insurance. Under this evidence the trial judge was authorized to find that Mrs. Monk did not have any disease of the heart before she made the application.

In reference to the fourth statement that Mrs. Monk had never been rejected for life insurance, the evidence shows that shortly before this application was made she applied to another company for insurance, but was rejected on account of her age and a slight showing of albumin. Her sons paid the premium which was returned to them by the agent, with the statement that she had been rejected. The evidence does not show that Mrs. Monk knew, or had been advised of such refusal of life insurance when she made this application. The evidence shows that appellant's soliciting agent knew of this refusal of insurance when he took the application and in this connection appellee alleged, in substance, that Sarah E. Monk was illiterate and could neither read nor write; that appellant's soliciting agent knew these facts, and himself inserted in the application the answers to all questions therein; that he did not read the questions or answers inserted to Mrs. Monk, and that she had no way of knowing what the answers were; that she answered truthfully all questions propounded to her by the agent; that, if the application contained any false or untrue answers, they were written by the agent without her knowledge or consent,

and with full knowledge that same were not made by her; that appellant's agent knew at the time that she had been refused insurance; that appellant accepted all assessments and premiums; and that under such facts and circumstances it will be held to have waived its right to insist, and is estopped to claim that the answer contained in her application that she had not been rejected for life insurance was false. The evidence followed closely these allegations. It shows that the agent who had known Mrs. Monk for a number of years knew she could neither read nor write. Appellee was present and answered some of the questions propounded by the agent, and Mrs. Monk answered some of them. Appellee testified that the agent did not ask whether his mother had been rejected for life insurance. After the death of Mrs. Monk and after the appellant had approved and allowed the claim of appellee, this agent wrote appellant's agent at Fort Worth a letter, telling him he knew that some false statements had been made in Mrs. Monk's application for insurance. He then went to one of the witnesses in this case and told him that he had without the knowledge of Mrs. Monk inserted the answer that she had not been rejected for life insurance, and requested witness to tell appellee he would help him collect the insurance for a part of it, and that, unless he agreed to the "split," he would keep him from recovering anything. Until this time there were no circumstances to excite any suspicion that the agent had not acted fairly in the matter.

The warranty in the application reads as follows: "I hereby warrant that the answers set out above are complete and true and shall form the basis of a contract between me and the Fort Worth Mutual Benevolent Association and further agree that if any untrue statement or statements have been made in the application as of age, health, family history, the certificate to be issued to me becomes void and of no effect."

Appellant cites and relies on those cases which hold that it is the duty of an applicant for insurance to read or have read his application for insurance before he signs it and to be sure his answers have been correctly written therein. But as is held by the Commission of Appeals in Schumann v. Brownwood Mutual Life Ins. Ass'n, 286 S. W. 202, which holding was expressly approved by the Supreme Court, "this is not the law unless the insured so agrees in the contract." In that case the following was quoted from the case of Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893, as being the settled law regarding the duty of an applicant for insurance to read his answers before signing the application: "'Where there were no circumstances to excite his suspicion to the contrary, we see no reason, however, why he may not have trusted to the medical examiner's correct and honest performance of this duty. We do not think his contract, or the exercise of ordinary prudence, demanded of him to assume that there was any want of capacity care, or honesty upon the part of the medical examiner, or made it his duty to assume the exercise of a supervisory power over the work of that officer. As a general rule, no doubt, the subjects of insurance will be but little qualified for such a task.'"

In the Schumann Case the Commission also quotes with approval the following from the case of Supreme Lodge of Fraternal Brotherhood v. Jones (Tex. Civ. App.) 143 S. W. 251: "'In 3 Cooley's brief on the Law of Insurance, p. 2594, it is said: "From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured in good faith makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent or merely the medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it be so stipulated in the application or policy." The same statement is a text in 2 Bacon on Benefit Societies and Life Insurance, Sec. 427. The great weight of authority is with the statement, where the insured acts in good faith and is himself without fault.'" See, also, Sovereign Camp, W. O. W., v. Ray (Tex. Civ. App.) 262 S. W. 819.

We therefore conclude that, since appellant's agent assumed responsibility of writing in truthful statements in the application, and since applicant was not at fault, and guilty of no wrong, and did nothing to induce the agent to insert the untrue answer or statement in the application, such untrue answer should not work a forfeiture of the insurance certificate.

Appellant's remaining assignments show no error and are overruled, and the judgment of the trial court will be affirmed.

Affirmed.