### FIRST TEXAS PRUDENTIAL INS. CO. v. MARTINEZ.

No. 8863.

Court of Civil Appeals of Texas. San Antonio.

June 22, 1932.

Rehearing Denied July 20, 1932.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

G. Woodson Morris, of San Antonio, for appellee.

SMITH, J.

This action was brought to recover upon an insurance policy issued by appellant upon the life of Estefana Z. Martinez. The policy was issued on December 1, 1930. The assured gave birth to a child on January 7, 1931. She died on January 28, 1931.

It was provided in the policy that, if the assured was pregnant at the time the policy was delivered, the same should be void and of no effect. As the assured gave birth to a child within five or six weeks of the delivery of the policy, it is obvious, and of course conceded by all parties, that she was pregnant at the time of delivery of the policy.

The provision against liability in the contingency mentioned was reasonable and valid, and a complete defense to this suit, unless the company waived that provision. Appellee pleaded such waiver, alleging that appellant's agents procuring the insurance and collecting the premiums therefor saw the assured on such occasions, had opportunity to observe her physical appearance; that she was then big with child; and those agents were bound to have discovered her obvious condition of pregnancy. The jury found that said agents "knew that the said deceased was pregnant" at the time of the delivery of the policy. The trial court approved this finding, and, imputing that knowledge of those agents to their principal, rendered judgment in favor of appellee, as the beneficiary, for the amount of the policy, $500, plus half that amount for attorney's fees, 12 per cent. thereof as a penalty, and 6 per cent. interest on the judgment so decreed.

The appeal is controlled by the proposition upheld by the trial court that because appellant's solicitor, or inspector, and its collecting agent, saw the assured when she was big with child, they were thereby charged with knowledge that she was pregnant; that this knowledge of its agents must be imputed to the insurer; that, when the insurer accepted premiums paid on the policy, with the knowledge thus acquired and imputed to it, it waived the stipulation against the pregnancy of the assured.

In her written application for this insurance, the assured falsely represented that she was not at that time pregnant. By express stipulation this application was made a part of the policy. It was offered in evidence by appellant in support of the latter's defense that it issued the policy in reliance upon said representation, which was material to the risk and false. The trial court excluded this application from evidence, upon the ground that it was not actually physically attached to the policy. This ruling is made the basis of one of appellant's complaints upon appeal. The question presented is the subject of much confusion in the statutes, no less than in the authorities. But it need not be decided here, since it becomes immaterial in view of the question of waiver and reversal thereon. Perhaps it is not amiss to observe here that false representations made by any person to deceive another into making a contract are ordinarily admissible in evidence, and this should be so as well where, as claimed in this case, a person fraudulently procures the issuance of a life insurance policy through false representations, minimizing the apparent risk to be assumed by the insurer.

It should be wholly immaterial whether such application may or not be attached to the policy, if its execution is conclusively shown, for a material falsehood knowingly made for the fraudulent purpose of securing insurance, or any other advantage, should be admitted as evidence of the fraud, in whatsoever form it is admittedly made. So, since the execution of the application in this case appears to have been conclusively established, it seems that justice and fairness, if not the statutes bearing upon the matter (articles 5049, 5050, Rev. St.), render it admissible in evidence, at least as against the objection that it was not physically attached to the policy issued upon the representations therein made.

It has been quite difficult to determine the question of waiver presented in the appeal. The jury found, as stated, that appellant's collector and inspector knew that the assured was pregnant, but this finding was based solely upon the inference that because those agents saw the assured, then and there big with child, they knew she was pregnant. The court held that this knowledge of its agents was imputed to appellant, and that, as appellant continued to collect the premiums upon the policy, it thereby waived the provision rendering the policy void because of the pregnancy of the assured.

The case is somewhat, but not entirely, like that of First Texas Prudential Ins. Co. v. Baldivia, 39 S.W.(2d) 957, 958, recently decided by this court. It was there held that "the bare fact that an insurance solicitor and collector had opportunities to observe the assured at intervals during the period of pregnancy, when he called upon her in the months of April, May, June, and July, 1928, to collect his premiums from her, was not sufficient to put his principal upon notice that the assured was pregnant with child on December 12, 1927, the date of her application for insurance.

This is so for reasons deemed too obvious to warrant their recital in this opinion." There the assured became pregnant in December, 1927, while the agent's opportunities for observing her occurred during the succeeding months of April, May, June, and July, 1928. Here the evidence does not show when the assured became pregnant, but she was further advanced in that state, when the policy was issued, than was the assured in the Baldivia Case, for childbirth occurred in this case five or six weeks after the policy was issued, whereas, in the former case, childbirth did not occur until seven months after issuance of the policy. The cases differ also in the facts that in the Baldivia Case the assured admittedly died in and as a result of childbirth, whereas, in this case, it is contended, although not so found, that the assured died later from other causes. Nor was waiver pleaded in that case.

The controlling point in this appeal, however, is one of notice, or knowledge, and waiver. We have been unable to bring this court to a declaration that the lay agents of an industrial life insurance company are charged by law with the duty, coupled with the necessary powers of perception, to determine whether their female prospects or policyholders are enciente, and to further declare the law to be that, when such agents have any business dealings with pregnant women, they are charged with knowledge of the latter's condition as a matter of law, and that such knowledge is imputable and must be imputed to the insurer.

■ We think the better rule, as a matter of decency, and the more reasonable one, as a matter of justice, should be that in matters of such intimate privacy the insurer may rely upon the solemn representations of women applicants, without the necessity of sending forth and depending upon lay agents to probe for such delicate secrets. Presumptions of fact or law do not seem to have progressed into this particular realm of speculation to the extent urged by appellee and adopted by the trial judge.

We are not prepared to say, in order to support this judgment, that every pregnant woman assumes such outward shape and proportions as to advertise her condition to every casual male observer, so that her pregnancy is made obvious to him and he is thereby charged by law with knowledge thereof. It is perhaps true that in many cases women are themselves unaware of their condition of pregnancy during the first few weeks, sometimes months; often a physical examination by a physician is necessary to determine the presence of the condition. It is a sacred condition of delicacy, of secrecy, which ought to be protected alike against ribald speculation and the enforced observation and conjecture of lay insurance agents.

■ The very physician who regularly attended the unfortunate assured in this case during the period of pregnancy and at childbirth testified in effect that ovarian tumors sometimes cause enlargements in women such as that occasioned by pregnancy; that the only certain way to determine the condition is by physical examination. It is true that appellee produced a number of neighbors who testified to the enlarged "stomach" of the assured, and that she "looked like" she was pregnant. Appellee thus brought out the ghost of the poor woman, now dead and gone, stripped and bared and paraded her to the gaze of court and jury and spectators, to elicit a finding that her condition, there made so obvious to the jury, was equally obvious to the young insurance agents when they casually viewed her months before in altogther different habiliments. But the impressions created from neighborhood gossip and speculation among those in daily association with the subject do not warrant the presumption, as a matter of law, that insurance inspectors and collectors are charged with knowledge of the subject's pregnancy, merely because of their most casual business contact with her.

We are not satisfied to uphold the judgment based upon such far-fetched presumption. We have been cited to no authority for such holding, and have found none upon the subject, except the Baldivia Case, supra, which was one of first impression in this court. We adhere to the principle laid down in that case, that knowledge in such case will not be presumed in the agent, or imputed to the principal.

We conclude also, upon further consideration, that the principle announced in the Baldivia Case and extended here is supported by our Supreme Court in Supreme Lodge v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277. In that case the assured did not herself know she was pregnant, although several months advanced therein. She honestly believed she was not pregnant, and, after giving a complete history of her condition to the insurer's examining physician, the latter also, in the absence of a physical examination, was convinced she was not pregnant, and wrote "No" for her in her application, in answer to the question, "Are you pregnant at this time?" The Supreme Court held that the representation or warranty was material to the risk, and, being untrue, voided the policy, albeit it was made in good faith.

The judgment is reversed, and the cause remanded for another trial. The case should be repleaded by both parties before another trial.