## MARTINEZ v. FIRST TEXAS PRUDENTIAL INS. CO.
### No. 1507.

Court of Civil Appeals of Texas. Eastland.

Jan. 17, 1936.

Rehearing Denied Feb. 14, 1936.

See, also, 52 S.W.(2d) 358.

G. Woodson Morris, of San Antonio, for plaintiff in error.

Templeton, Brooks, Napier & Brown and W. F. Nowlin, all of San Antonio, for defendant in error.

GRISSOM, Justice.

On November 20, 1930, a soliciting agent for the First Texas Prudential Insurance Company (hereinafter referred to as defendant) obtained an application for life insurance in the defendant company from Estefana Martinez, the beneficiary to be her husband, Vicente Martinez (hereinafter called plaintiff. On November 21st she was inspected by its inspector, who acted in lieu of a medical examiner when policies for a small amount were to be writ-ten; the inspector marked the application approved as a first-class risk; on December 1, 1930, the policy was issued and promptly delivered to Mrs. Martinez; January 7, 1931, she gave birth to a fully developed normal child who is still alive; January 28, 1931, she died, the primary (if not sole) cause of her death being influenza. Plaintiff brought suit on the policy for the amount thereof, penalty and attorney's fees. The defense was that at the time of the application for and issuance and delivery of the policy deceased was pregnant; that she falsely represented her condition in this respect in the application.

In reply to this defense, plaintiff alleged that defendant's agents at such times had observed the deceased and could see that she was pregnant and that they knew of such condition; that deceased did not make any misrepresentation as to her condition; that no inquiry was made as to whether she was pregnant, and she made no statement relative to such condition.

The application contains this question: "If a female, is she now pregnant?" The answer "No" was written into the application. The policy contains a stipulation that it shall be void "(4) if the insured on delivery of policy * * * was pregnant."

E. A. Schulze testified, among other things, that at the times in question he was defendant's cashier. "As applications for a risk are turned in to the Company, I pass on them for the Company, I would go out and look at the applicant as to his physical condition. * * * The Company had me charged with that duty and acted on what I said about it. If I put an O. K. on there it went through, and if I put 'no good risk' the application was turned down. * * * I pass on hundreds of risks. I remember going out to see a Mrs. Estefana Martinez and inspecting her * * * I went out there to inspect the risk * * * that was the purpose of my trip. * * * She did not sign anything, she couldn't write. The procedure the Company follows is they look over the application, I am sent there and I put my O. K. thereon and they follow that. My duties are to go out there and see as to the condition of health of the applicant. * * * I went out there for the express purpose of knowing something about her physical condition."

T. C. Robertson, a witness for defendant, testified in part as follows: "I am manager of the First Texas Prudential In-

surance Company in San Antonio, Texas, and have been * * * for 24 years. I know the procedure in taking applications, they are all handled in the same way and this application was handled in the usual way. I have control over the soliciting agents and collecting agents. The local inspector works direct under the secretary of the company. The duty of the soliciting agent is to go out and solicit these applications for insurance of anybody that wants insurance, and asks the questions on these applications and makes the answers on the application when they are given to them. The collector then follows up and collects this insurance weekly * * * I instruct the agents to look at the applicants when they take the insurance, but not to report if they see anything wrong, but are supposed to note it on the application. That is a part of their duty. The soliciting agent is the fellow that attends to that. The inspector works directly under the secretary of the Company. I have no charge over him. * * * After the agent has returned the application that is one check that we have got on the party insured and it is his (inspector's) duty to go out there and check again and see if this risk is all right * * * and (he) makes his report on the back of the form. * * * It is the inspector's job to find out before she died whether she was pregnant."

■ The evidence was sufficient to authorize a finding (1) that the agent soliciting the insurance and preparing the application saw deceased several times before she consented to take the insurance and answered some questions which he answered on the application. (2) That she was inspected by the defendant's inspector who acted in this case in lieu of a medical examiner. (3) That upon delivery of the policy deceased paid the amount then due to defendant's agent and that thereafter both before and after the birth of her child until her death she was seen on the average of more than once each week by defendant's collector and paid him for the insurance in weekly installments. (4) That she was 19 years of age. (5) We deem the evidence amply sufficient to have authorized the jury to believe that she was in the customary physical condition and presented the usual appearance of a woman of her age about 6 weeks before childbirth. That such condition existed at the time the application was prepared, at the time she was inspected, and at the time of the deliv-

ery of the policy. We deem the evidence sufficient to have justified a belief and finding that defendant's said agents did know (as plaintiff alleged) her true condition. (6) The evidence would sustain a finding that deceased was not asked whether she was pregnant and made no statement relative thereto.

Under this situation, was the policy void as a matter of law because of her pregnancy, or was it a question of fact whether defendant had waived such provision of the policy?

In the case of Texas State Mutual Fire Ins. Co. v. Law (Tex.Civ.App.) 3 S.W. (2d) 505, 506, the facts were that Law, having obtained two policies of fire insurance on his property from said insurance company through application to its local agent, and having made improvements on the insured premises, again approached such agent and applied for additional insurance. Whereupon the agent advised Law that his company would not carry further insurance, and declined to make the application to the Company. Law then procured additional insurance on the same premises from another company. He testified that the agent "told him both before and after [he] procured the additional insurance that it would be 'all right' with him and with appellant company." The policy contained a provision that, if additional insurance was had on the property, the company would not be liable for loss. The judgment of the trial court was for Law, which judgment was reversed and rendered by the Court of Civil Appeals, which last judgment was reversed by the Commission of Appeals, and the judgment of the district court affirmed. Law v. Texas State Mut. Fire Ins. Co., 12 S.W.(2d) 539. The commission in its opinion by Judge Nickels, speaking of the information given by Law to the local agent that he was going to and later that he had obtained additional insurance from another company, said:

"In that immediate connection he acquired knowledge that Law proposed to get additional insurance, and immediately thereafter got knowledge that the additional insurance had been effected through another agent. He did not protest at any time; on the contrary, he assured Law 'it would be all right with him and his company.'

"In deference to contentions in behalf of the insurer, we assume Scott's capacity to

have been that of 'soliciting agent.' Even so, the information given by Law was given him as such and in connection with an effort to have Scott perform his duty as such. The knowledge thereby acquired related to the 'very subject-matter' with which Scott was authorized to represent the Company, i. e., taking or procuration of an application for insurance (with information touching the 'risk'), forwarding of same to the 'home office,' etc. and, upon familiar principles, Scott's knowledge became that of his company. Missouri, K. & T. R. Co. of Texas v. Belcher, 88 Tex. 549, 551, 32 S.W. 518.

"Thereupon a duty of election was owed by the company and to the policyholder, whose performance was not undertaken until after the fire, and that was too late."

The policy there in question contained a stipulation in effect the same as in the instant case to the effect that no agent of the company, except certain officers therein named, had authority to "waive, change, or alter any of the provisions, stipulations and conditions in said policy. * * *" The court held that such restrictions of authority "have relation to agents and not to the principal. They present no obstacle to waiver by the company in any manner it might choose (Morrison v. Insurance Company of North America, supra [69 Tex. 353, 363, 6 S.W. 605, 5 Am.St.Rep. 63]."

In Terry et ux. v. Texas Prudential Ins. Co., 77 S.W.(2d) 761, 764 (writ dismissed), under a similar fact situation, the Court of Civil Appeals at El Paso said: "Where an insurer, at the time of the issuance of a policy, accepts the premium and delivers the policy, with knowledge of existing facts which, if insisted upon, would invalidate the contract from its inception, such knowledge constitutes a waiver of the right of avoidance because of such facts, and an estoppel arises which precludes the insurer from setting up such facts in avoidance of the contract."

There was evidence that the agents had authority to solicit the insurance "correctly fill out said application in accordance with the information given by the insured, deliver the policy, and collect the premiums thereon, but 'had no authority to waive, change or alter any of the terms or conditions of the application or policy; and had no authority to accept an application or deliver a policy on the life of a person known to them to have, or to have had, heart disease.'"

The court further said:

"From the questions to be answered by Horine it is plain it was his duty to disclose to his principal the knowledge which he had acquired of the physical infirmity from which the applicant was suffering because of heart disease and to also advise whether he considered the applicant's life a good risk and would recommend its acceptance.

"It thus appears the defendant delegated to Horine authority to ascertain whether the applicant had heart disease or other physical infirmity and imposed upon him the duty of disclosing to defendant the knowledge thus acquired. The knowledge so acquired by Horine was within the scope of the authority delegated to him in soliciting the insurance, taking the application and transmitting the same to his principal.

"In our opinion the knowledge by Horine that the applicant had heart disease is imputable to his principal under the familiar rule that notice to an agent when acting within the scope of his authority and with reference to a matter over which his authority extends is notice to his principal." See authorities there cited at page 765 of 77 S.W.(2d) sustaining the statement.

The defendant in the case just quoted from was the same as in the instant case. If there is any difference in the fact situation between the case quoted from and the present case, the facts in the instant case more strongly support the finding that the agents of the defendant were acting within the scope of their authority in obtaining the information relative to the condition of deceased by reason of which the company here claims a forfeiture and by virtue of which knowledge the plaintiff charges a waiver of the provision alleged to void the policy.

Further, in the instant case there was evidence that would authorize the jury to find that the applicant gave the defendant's agents true answers to all questions propounded to her; that the vital question was not asked, but that the soliciting agent, the inspector, who acted in lieu of a medical examiner, and the collecting agent knew at all times in question of the true condition of the applicant; and that the applicant was justifiably ignorant of the acts of the agents in failing to inquire as to her condition and wrongfully inserting into the application an answer which they knew to be incorrect, which answer was inserted with-

out the knowledge or connivance of the applicant. See 24 Tex.Jur. § 177, p. 923.

The authority last cited clearly answers the contention that the applicant was bound by incorrect answers written into the application by the defendant's agent and that the policy was thereby made void. As bearing directly upon the questions involved in this case, we feel justified in quoting at length from the case of Washington Nat. Ins. Co. v. Brock, 60 S.W.(2d) 861, 862 (writ refused):

"The rule is well settled in this state that where, as the facts show in this case, an insurance agent with authority to solicit business, to make and forward the application for insurance, to collect and transmit premium, and to deliver the policy of insurance, notice to him of any matter affecting the risk involved, and required to be placed in the application, is notice to the insurer; and the insurer will not be permitted to deny liability on the policy on account of the neglect, failure, or fraud of the agent in not informing the insurer of such matters. German Ins. Co. v. Everett, 18 Tex.Civ.App. 514, 46 S.W. 95; Southern Mut. Fire Ins. Co. v. Mazoch Bros. (Tex.Civ.App.) 291 S.W. 257; American Nat. Ins. Co. v. Bailey (Tex.Civ. App.) 3 S.W.(2d) 539; American Surety Co. v. Blaine (Tex.Civ.App.) 9 S.W.(2d) 765; Southern Underwriters v. Jones (Tex.Civ.App.) 13 S.W.(2d) 435; Home Mut. Life Ins. Ass'n v. Pool (Tex.Civ. App.) 18 S.W.(2d) 693; Lee v. Mutual Protective Ass'n (Tex.Civ.App.) 47 S.W. (2d) 402; 32 C.J. pp. 1067, 1068, § 145; 32 C.J. p. 330, §§ 587, 588.

"(2) The rule is also settled in this state, as was held by this court in the case of American Nat. Ins. Co. v. Park, 55 S.W.(2d) 1088, 1090 (writ of error refused), that : 'Where the insured in good faith makes truthful answers to the questions contained in the application, but his answers owing to the fraud, mistake or negligence of the agent in filling out the application are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy, for the solicitor of the insurance is the agent of the company, and all statements of assured in the absence of fraud must be deemed representations and not warranties.' Home Ins. & Banking Co. v. Lewis, 48 Tex. 622; Texas Banking & Ins. Co. v. Stone, 49 Tex. 4; North American Acc. Ins. Co. v. Trenton (Tex.Civ.App.) 99 S.W. 740; Supreme Lodge of the Fraternal Brotherhood v. Jones (Tex.Civ.App.) 143 S.W. 247; Massachusetts Bonding & Ins. Co. v. Vollmer (Tex.Civ.App.) 246 S.W. 747; Schumann v. Brownwood Mut. Life Ins. Ass'n (Tex.Com.App.) 286 S.W. 200; Massachusetts Bonding & Ins. Co. v. Worthy (Tex. Civ.App.) 9 S.W.(2d) 388; American Ins. Union v. Monk (Tex.Civ.App.) 16 S.W. (2d) 371; Inter-Ocean Cas. Co. v. Brown (Tex.Civ.App.) 31 S.W.(2d) 333; Provident Life, etc., Ins. Co. v. Parks, 238 Ky. 518, 38 S.W.(2d) 446; 32 Corpus Juris, p. 1290, § 516; 32 Corpus Juris, pp. 1333-1336, §§ 601 and 603.

"Nor is there any merit to the contention of appellant that the duty rested upon appellee to read the application for the insurance, or to have it read to him, either before the application was sent to appellant, or after it was attached to and delivered as a part of the insurance policy sued upon, in order to ascertain if the agent had correctly written his answers in the application. This contention is predicated upon the answer, 'Yes,' of appellee, claimed to be in the nature of a warranty, to question 16 in the application, which reads: 'Do you represent each and all of the foregoing answers to be true and complete, and agree that the falsity of any answer in this application for a policy shall bar the right to recover thereunder, if such answer is made with intent to deceive; or materially affects the acceptance of the risk or the hazard assumed by the company.'

"This court in construing a similar question and answer held contrary to the contention of appellant in the case of American Nat. Ins. Co. v. Park, supra. It was also held in Schumann v. Brownwood Mut. Life Ins. Ass'n (Tex.Com.App.) 286 S.W. 200, 202, as follows: 'But it is suggested that it was the duty of the insured to read his application before he signed it and be sure his answers had been correctly written therein. This is not the law, unless the insured so agrees in the contract. * * * In this case there was nothing to cause the insured to suspect that Martin would falsify his answers. That being true, he had a right under the authorities we have reviewed, to rely upon Martin's honesty in filling out the application.' Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S.W. 621, 7 L.R.A. 217, 16 Am.St.Rep. 893; Massachusetts Bonding & Ins. Co. v. Worthy (Tex.Civ.App.) 9 S.W.(2d) 388.

"We are also of the opinion that even though the answers falsely stated that appellee had not made any claim for and had not been paid indemnity under any other policy of insurance, appellant is not relieved of liability on the policy in suit, because appellee was not responsible for the false answers. * * * The question here presented and the findings and conclusions of the trial court thereon are controlled by and are in accordance with the provisions of subdivision 4 of article 4732, and articles 5043 and 5045, R.S.1925. See, also, Guarantee Life Ins. Co. v. Evert (Tex.Civ.App.) 178 S.W. 643; Massachusetts Bonding & Ins. Co. v. Vollmer (Tex. Civ.App.) 246 S.W. 747; Southern Surety Co. v. Butler (Tex.Civ.App.) 247 S.W. 611; First Texas Prudential Ins. Co. v. Gamble (Tex.Civ.App.) 257 S.W. 1005; Southern Surety Co. v. Benton (Tex.Civ. App.) 267 S.W. 302; Southland Life Ins. Co. v. Norton (Tex.Civ.App.) 297 S.W. 1083; Southern Surety Co. v. Solomon (Tex.Civ.App.) 4 S.W.(2d) 599; Huey v. American Nat. Ins. Co. (Tex.Civ.App.) 45 S.W.(2d) 340; People's Mut. Life Ass'n v. Cavender (Tex.Civ.App.) 46 S.W.(2d) 723; First Texas Prudential Ins. Co. v. Pipes (Tex.Civ.App.) 56 S.W.(2d) 203; American Central Life Ins. Co. v. Alexander (Tex.Com.App.) 56 S.W.(2d) 864."

In Republic Reciprocal Ins. Ass'n v. Ewing, 27 S.W.(2d) 270, 272 (writ refused) the Court of Civil Appeals at Waco, in an opinion by Chief Justice Gallagher, speaking of the authority of insurance agents, under facts comparable to the present case, and considering the question as to whether the knowledge of such agents is imputable to the insurer, said:

"Whatever information he acquired in the discharge of such duties was acquired in the course of his employment, and such information was legally imputed to appellant as his principal, regardless of whether actually communicated to it or not. Southern Underwriters v. Jones (Tex.Civ.App.) 13 S.W.(2d) 435, 436, par. 2 (writ refused), and authorities there cited."

"An insurance company which issues and delivers a policy and accepts the premium thereon, with knowledge of existing facts which, if insisted on, would invalidate such policy from its very inception, waives conditions thereof inconsistent with the facts so known, and is estopped from thereafter asserting the breach of such conditions in avoidance of liability thereon.

* * * Such a company is bound, not only by knowledge of the existing facts possessed by its agent who actually consummates the contract by accepting the application and issuing a policy thereon, but also by the knowledge of such facts acquired by its agent in soliciting, receiving, and forwarding the application, though not communicated to it." Southern Underwriters v. Jones, 13 S.W.(2d) 435, 436 (writ refused).

Also see Hanover Fire Ins. Co. v. Nash et al. (Tex.Civ.App.) 67 S.W.(2d) 452 (writ refused); Williams et al. v. Daniel et al. (Tex.Civ.App.) 30 S.W.(2d) 711 (writ refused); Republic Ins. Co. v. Watson et al. (Tex.Civ.App.) 70 S.W.(2d) 441 (writ dismissed).

■ A provision in an insurance policy that a waiver may be accomplished only by certain officers may itself be waived by the company. 24 Tex.Jur. § 117, p. 831.

"An insurer is charged with knowledge of any pertinent fact affecting a risk acquired by its agent while acting within the scope of his agency, no matter what the source * * *. Where knowledge is gained by the agent while acting within the scope of his authority, he is presumed to communicate to the insurer the facts of which he has so acquired knowledge, and, whether he actually does so or not, such knowledge of the agent becomes the knowledge of the insurer." 24 Tex.Jur. § 111, pp. 815 and 816.

"According to the more generally accepted rule, a provision in the policy itself imposing a limitation upon the authority of agents to alter or vary its terms does not apply to the making of the contract or to those conditions which relate to its inception, nor will it permit the company to repudiate the policy because of facts known to its agent at the time it is issued. There is, however, contrary authority." 32 C.J. § 597, p. 1332.

"Knowledge acquired by a soliciting agent in the course of his employment in soliciting insurance, preparing and transmitting applications, delivering policies, etc., is ordinarily imputed to the company." 32 C.J. § 575, p. 1325.

On the question of the effect of the statements in the application, see Schumann v. Brownwood Mut. Life Ins. Ass'n (Tex.Com.App.) 286 S.W. 200; American Ins. Union v. Monk (Tex.Civ.App.) 16 S.W.(2d) 371 (writ dismissed); Washing-

**650**

ton Fidelity Nat. Ins. Co. v. Smith (Tex. Civ.App.) 80 S.W.(2d) 413; Brady Mutual Life Ins. Ass'n v. Smith (Tex.Civ.App.) 76 S.W.(2d) 231; First Texas Prudential Ins. Co. v. Pipes (Tex.Civ.App.) 56 S.W. (2d) 203 (writ dismissed); Lee v. Mutual Protective Ass'n of Texas (Tex.Civ. App.) 47 S.W.(2d) 402, writ dismissed (Tex.Com.App.) 65 S.W.(2d) 271.

Under the facts disclosed, and by virtue of the foregoing authorities, we unhesitatingly hold that the contract was not void as a matter of law.

■ This case on a former appeal was before the Court of Civil Appeals at San Antonio [First Texas Prudential Ins. Co. v. Martinez, 52 S.W.(2d) 358, 360], which court reversed the judgment of the trial court. It is contended that such decision is the law of the case and decisive of the questions here presented. We are not in accord with this contention. Said court in its opinion suggested that "the case should be repleaded by both parties before another trial." This was done. The statement of facts shows that defendant offered in evidence the former pleadings, etc., but they are not found in the statement of facts. It is not shown that the situation now is substantially the same as on the first appeal.

We are of the opinion that the court erred in instructing a verdict for the defendant. The judgment of the court below is reversed and remanded.