# THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee, v. PAULINE B. TEMPLETON, Appellant.—362 S. W. (2d) 938.

Western Division, at Jackson. February 21, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

616

Jack Petree, Evans, Petree & Cobb, Memphis, for appellant.

Edward W. Kuhn, Henry T. V. Miller, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for appellee.

CARNEY, J. The Chancellor found in favor of the complainant, Mutual Life Insurance Company of New York, and ordered the cancellation and rescission of a $10,000 life policy issued April 10, 1959, upon the life of David A. Templeton, husband of the defendant, Mrs. Pauline B. Templeton, now a resident of Memphis, Tennessee. The Chancellor dismissed the cross-bill of the defendant seeking a recovery of the face amount of the policy plus attorneys fees and penalties.

Mr. Templeton, who was a lawyer in Dallas, Texas, died December 7, 1959, from cancer of the chest known as chondrosarcoma. In addition to general practice of law, Mr. Templeton had served as an assistant attorney general and later as county judge. Apparently this office is comparable to judge of a probate court in Tennessee. His friends and associates generally referred to him as Judge Templeton.

It is the contention of the complainant that Mr. Templeton gave false answers in his application for the insurance policy; that at the time the application was signed on April 10, 1959, he knew he was suffering from cancer of the chest; that he deliberately withheld such information from the complainant insurance company and that he stated on his application that he was then in good health and free from physical impairment or disease well knowing that he was not in good health.

It is the contention of the defendant-cross complainant that Mr. Templeton was guilty of no fraud in procuring the insurance; that the application was filled out by an agent of the complainant company who was fully aware of the medical history of Mr. Templeton; that such knowledge was imputable to the complainant insurance company and that the company by the issuance of the policy has waived any misstatements in the application and is estopped to deny liability.

The Sid Murray "Pay In A Hurry" Company is located at Corpus Christi, Texas, and operates a general insurance agency representing a number of companies including the Metropolitan Casualty Company which had issued what would be known in Tennessee as a group sick and accident policy to the members of the Texas State Bar.

Mr. Templeton, as a practicing lawyer, had held one of these policies for many years and during the five year period prior to 1959 had collected many hospital claims under his policy with the Metropolitan Casualty Company. These claims were all serviced and paid by the Sid Murray Agency. Carl H. Jones of Dallas, Texas, was the representative of the Sid Murray Company in Dallas. He was a close friend of Mr. Templeton and had processed many, if not all, of the hospital claims made by Mr. Templeton to the Metropolitan Casualty Company.

About the first of April, 1959, the complainant, Mutual Life Insurance Company of New York, sent out a brochure to the members of the Texas State Bar offering them a $10,000 life insurance policy without medical examination. Such a policy is designated as a wholesale policy; for some reason group policies are verboten in Texas. The Sid Murray Company of Corpus Christi was designated as the general agent to receive and obtain applications from the members of the Texas State Bar for this life insurance.

On April 10, 1959, the local agent, Carl Jones, went to the office of Templeton and Gowan, attorneys in Dallas, Texas, and solicited the application of Mr. Templeton's partner, Mr. Gowan, for one of these new life insurance policies. While there he talked with his friend, Mr. Templeton.

Mr. Templeton manifested an interest in obtaining such a policy. Mr. Templeton asked Agent Jones if he thought he would be able to qualify to which the agent answered he didn't know. Mr. Templeton asked what he had to lose by making application to which the Agent Jones replied, "Nothing, if they reject your application

your money will be returned." The application which was filled out was very short. In addition to name, date of birth, beneficiary, etc. these four questions were answered as follows:

"1. Are you now actively and regularly engaged on a full-time basis in an occupation for remuneration or profit? Yes (X) No ( ) If 'Yes', define occupation and duties under Remarks.

"2. Have you received medical or surgical care or advice in the past two years? Yes (X) No ( ) If 'Yes', give names, dates, duration and treatment under Remarks.

"3. To the best of your knowledge and belief are you now in good health and free from physical impairment or disease? Yes (X) No ( ) If 'No', give details under Remarks of all exceptions not already listed.

"4. Have you ever applied for Life Insurance or for reinstatement which was declined, postponed or modified in any way? Yes ( ) No (X) If 'Yes', give date and company under Remarks."

REMARKS:
1. Attorney
2. Auto Accident— broken leg Dec., 1957. Pneumonia— Jan. 1957— Phlebitis— March, 1957

The policy contained the following:

"*The Contract:* The policy and the application, copy of which is attached and made a part hereof, constitute the entire contract.

"All statements made in the application shall be deemed representation and not warranties. No statement made by the Insured or on his behalf shall invalidate this policy or be used in defense to a claim under the Policy, unless contained in the *written*

application and unless a copy of the application is attached to this policy when issued.

"No agent or other person, except the President, a Vice-president, or a Secretary of Mutual of New York, has authority to modify or enlarge this contract, or to waive any requirement in this contract."

On April 30, 1957, which was within less than two years prior to April 10, 1959, Mr. Templeton had been admitted to the hospital in Dallas complaining primarily of shortness of breath, chronic cough, etc., Two tumors were discovered in his chest by his physician, Dr. Harville; one was about three inches in diameter and the other about one inch in diameter.

A biopsy was performed and the tumors were determined to be malignant. Dr. Harville called in a Dr. Ashe and after a conference they explained to Mr. Templeton that the tumors could not be removed by surgery and that they could be treated only by X-ray. These X-ray treatments were administered daily over a period of approximately three weeks. Mr. Templeton left the hospital sometime about the last of May, 1957, but continued to see his physician, Dr. Harville, at intervals of approximately one month at which time the tumors were regularly examined.

Dr. Harville testified that at first they seemed to regress in size but by June, 1958, they had begun to grow again and a third tumor showed up in the same area. From time to time Mr. Templeton received supplementary X-ray treatments. On January 14, 1959, Dr. Harville again examined the tumors. After describing their measurements by centimeters he explained that these three tumors were protruding from the chest of Mr.

Templeton in the following manner: (1) About the size of one-half of a small or medium size grapefruit; (2) Another about the size of one-half of a lemon; and (3) About the size of a lime or a small lemon.

As far back as 1955 Mr. Templeton had had one or two small knots removed from the left side of his neck; in January, 1956, he had a small growth removed from his shoulder; in January, 1958, he had one or two small tumors removed from his face. His personal physician, Dr. Harville, testified that Mr. Templeton knew that he had cancer.

The following is a summary of the dates of illnesses prior to April 10, 1959, for which Mr. Templeton made application and was paid medical and hospital expenses by the Metropolitan Casualty Company through the Sid Murray Agency:

| "Record Claim | Date of Illness or Injury | Nature of Illness or Injury | Date Claim Paid |
|---|---|---|---|
| 1 | Mar. 13, 1954 | (1) Anxiety state, severe, (2) Hypertension, essential, mod. | Apr. 21, 1954 |
| 2 | Sept. 14, 1954 | Multiple Febronatosis, Left Arm, Removal of ten (10) tumors, Seven cau. (cauterizations) | Oct. 1, 1954 |
| 3 | Jan. 3, 1955 | Removed small neoplasm, left side of neck | Feb. 3, 1955 |
| 4 | Jan. 5, 1956 | Removal of growth on left shoulder | Jan. 26, 1956 |
| 5 | Jan. 8, 1957 | Bronchopneumonia | Jan. 30, 1957 |
| 6 | Jan. 19, 1957 | Acute Thrombophlebitis, right leg and pulmonary embolus (phebitis, right leg) | Jan. 23, 1957 Apr. 23, 1957 |

| | | | | |
|---|---|---|---|---|
| 7 | Apr. | 30, 1957 | Phlebitis right popliteus region Chondrosarcoma of the sternum, Biopsy sternum, mass Post-irradiation illness. | June 14, 1957 |
| 8 | June | 10, 1957 | Post-irradiation sickness acute phlebitis | not known |
| 9 | Dec. | 29, 1957 | Fractured Tibia, severe contusion, left chest, automobile accident | Jan. 28, 1958 Feb. 17, 1958 |
| 10 | Jan. | 23, 1958 | Basal cell epithelioma of face Excised and cauterized, Excision of two (2) lesions from face, malignant" | May 15, 1958 |

█ We concur in the finding of the Chancellor that on April 10, 1959, Mr. Templeton knew that he was suffering from cancer which could not be removed by surgery and which had not responded to X-ray and knew that he was not in good health. Hence, his statement that he thought he was in good health could not reasonably have been true.

The agent Jones testified that he knew about the two small growths being removed from the face of Mr. Templeton and that he knew he had been in the hospital a number of times because he had assisted him in making claim under his hospital policy with Metropolitan Casualty Company. However, Agent Jones expressly denied that he knew that Mr. Templeton was suffering from an incurable cancer; he stated that Mr. Templeton did not mention to him that he was suffering from cancer; that he considered the removal of the two growths from his face to have been of minor importance.

However, he went further and admitted on cross-examination that when he and Mr. Templeton were dis-

cussing the answers to be put on the application relative to the medical history that Mr. Templeton said to him, "You are as familiar with my medical history as I am;" and that he indicated to Mr. Templeton that he would write a note to the Sid Murray Agency in Corpus Christi along with the application instructing Sid Murray Company to look up the claims filed by Mr. Templeton for hospital and medical payments with Metropolitan Casualty Company and attach the same to the application. Mr. Jones was not sure whether he ever sent the memo or not.

The company received the application without any mention of the other illnesses of Mr. Templeton and without any mention of possibility of cancer. The policy under question was issued by the company and delivered to Mr. Templeton about April 27, 1959.

Mr. Templeton received this policy while he was in the hospital for an operation for the removal of one kidney which had become cancerous. Mrs. Templeton called Mr. Jones and thanked him for securing the policy for them. Mr. Templeton's physical condition continually declined and he died on December 7, 1959, from the cancer of the chest, there having been an inward growth as well as outward growth which obstructed the veins in his neck.

It is the contention of the appellant that if the Sid Murray Agency had checked the various claims for hospital and medical expenses filed by Mr. Templeton with the Metropolitan Casualty Company it would have learned that Mr. Templeton was found to have had cancer of the sternum in May, 1957; that both Carl Jones and Sid Murray were agents of the complainant company and that the information which they had or should have

had was imputable to the complainant company and that the issuance of the policy under such circumstances amounted to a waiver of the false statements made in the application.

■ Since the contract of insurance involved in this litigation was delivered in the State of Texas, it is a Texas contract and this appeal must be determined under the laws of the State of Texas. Metropolitan Life Insurance Co. v. Greene, 1936, Texas Court of Civil Appeals, 93 S. W. (2d) 1241.

■ Under the authority of T. C. A. Sections 24-607 and 24-608 this court takes judicial notice of the common law and the statutes of every other state. Where no Texas law is proven or found on the particular subject, it will be presumed that the law of Texas on such subject is the same as the law of Tennessee. Marsh v. Fowler, 207 Tenn 377, 340 S. W. (2d) 881; Hamilton v. Peoples, 38 Tenn. App. 385, 274 S. W. (2d) 630; Schenk v. Gwaltney, 43 Tenn. App. 459, 309 S. W. (2d) 424.

The appellant relies very strongly upon Article 21.04 of Vernon's Insurance Code of Texas which is as follows:

"Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

The comparable statute in Tennessee is to be found in T. C. A. Section 56-705 which is as follows:

"56-705. Solicitors are agents of the insurer—Licensed fire insurance brokers excepted.—Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers. [Acts 1907, ch. 442, sec. 1; Shan., sec. 3275a2; Code 1932, sec. 6087.]"

The principal case relied upon by the appellant in support of her appeal in this cause is Martinez v. First Texas Prudential Insurance Co., 1936, Texas Court of Civil Appeals, 90 S. W. (2d) 645. This was a suit for the recovery of the death benefits under a policy of industrial life insurance issued without a medical examination. One of the questions on the application was whether or not the insured was pregnant and this question was answered, "No." The insurance policy expressly provided that no coverage would be afforded the insured if she were in fact pregnant at the time of the issuance of the policy. The insured was pregnant at the time of the issuance of the policy and gave birth to a child about six weeks thereafter. She died and suit followed.

In the Martinez case the insured could not write and the application was filled out by someone else, probably an agent of the company. At any rate, an agent of the company interviewed the insured in person in lieu of a medical examination and stamped upon the application his approval as a proper risk for insurance.

The Texas Court of Civil Appeals in affirming a judgment on the policy stated that there was ample evidence

upon which the jury could have found that the insured *did not falsely represent her physical condition* and that she gave true answers to all the questions asked on the application and that the misrepresentations were not of her own doing and that in substance the agent with authority so to do observed the physical condition of the applicant and waived the condition against pregnancy by approving her as a proper insurance risk.

In the case of Adams v. Lasalle Life Insurance Co., 1936, Texas Court of Civil Appeals, 99 S. W. (2d) 386, the insured was afflicted with a cancer of the head or face which was plainly visible to the agent. The application for insurance falsely recited that the applicant was in good health. The Court of Civil Appeals of Texas reversed the lower court and held that the company did not have a right to deny liability under the policy because section 2 of the statute under which the insurance company was doing business specifically provided that nothing in any application for insurance should constitute a defense to a suit on the policy issued thereon unless a copy of the application was attached to the policy. In the Adams case the application was not attached to the policy.

In the case of American National Insurance Co. v. Mays, 1936, Texas Court of Civil Appeals, 97 S. W. (2d) 975, the insurance company sought to deny liability on a life policy issued upon applicant without medical examination on the grounds that the applicant was not in sound health on the date of the policy and that the policyholder had given fraudulent answers on the application. The jury found all the issues of fact in favor of the plaintiff and in substance found that the applicant had not given fraudulent answers. The Texas Court of

Civil Appeals held that the knowledge of the agent as to the physical disability of the applicant was imputable to the insurance company and rendered judgment in favor of the plaintiff.

Likewise, in National Life & Acc. Insurance Co. v. Clark, 1955, Texas Court of Civil Appeals, 279 S. W. (2d) 134, the application for insurance contained false answers as to the applicant's addiction to alcoholism. The application was filled out by the defendant's agent. There was a judgment for the plaintiff on the policy against the company because there was a jury verdict in favor of the plaintiff on the issues of fact as to the insured's alleged fraudulent answers on the application.

In the present case there has been no jury verdict but the Chancellor has found that both Mr. Templeton and the agent Jones knew Mr. Templeton was not in good health at the time the application was made. The Chancellor has further found "that Jones and Templeton either gambled or conspired to obtain a policy of insurance upon the life of Mr. Templeton and, under these circumstances, that fraud was participated in by the agent; that the policy had its inception in fraud and that the court cannot enforce it. * * *" There is a presumption in this court of the correctness of the Chancellor's finding. T. C. A. Section 27-303.

The evidence does not preponderate against the finding of the Chancellor and we concur in his holding that there was collusion between Mr. Templeton and the agent Jones to withhold material and determinative information from the company in order to enhance the chances of Mr. Templeton receiving a policy. He delivered the policy to his friend, Mr. Templeton, while

Mr. Templeton was in the hospital for an operation for the removal of a kidney which had become cancerous.

The Chancellor cited as his primary authority the case of Judd v. Lubbock Mutual Aid Association, Texas Court of Civil Appeals, 269 S. W. 284. In the Judd case the applicant was in poor health and knew it; his wife knew it and his cousin, the agent of the defendant company who filled out the application, knew it. The Texas Court of Civil Appeals denied recovery under the policy on the grounds that even though the agent who filled out the application was found by the jury to be acting as agent for the defendant company yet his knowledge of the bad health of the applicant could not be imputed to the defendant because he had perpetrated a legal fraud upon the insurance company and in favor of his kinsman in the matter.

Appellee cites the case of San Angelo Life and Accident Association v. Haynes, 1937, Texas Court of Civil Appeals, 106 S. W. (2d) 263. In that case an applicant filed an application for insurance containing a false statement which the agent knew to be false. The appellate court held that the agent's knowledge of the applicant's condition was not imputable to the insurance company because of the collusion which existed between the applicant and the agent citing 2 Am. Jur., Agency, Section 379, Agent Acting Adversely or Fraudulently.

The appellant cites our Tennessee case of Industrial Life and Health Insurance Co. v. Trinkle, 1947, 185 Tenn. 434, 206 S. W. (2d) 414. That case was a suit upon an industrial life policy issued upon the life of an infant without medical examination. The child was prematurely born and at the time of the issuance of the policy was in

the hospital. One of the agents paid the first premium and delivered the policy to the mother, Mrs. Trinkle.

The Supreme Court affirmed a holding of the Court of Appeals that the knowledge of the agent of the premature birth of the child was imputable to the insurance company and constituted a waiver of the policy conditions as to "good health", etc. However, the opinion by Chief Justice Neil expressly recited, "There is no evidence of collusion between the insured and these agents." The court differentiated the facts from those obtaining in DeFord v. National Life and Accident Insurance Co., 1945, 182 Tenn. 255, 185 S. W. (2d) 617.

The DeFord case was a suit to recover on two policies of industrial insurance issued without medical examination. The company defended on the ground that the insured was not in good health at the time of the issuance of the policy. The insured had been suffering from a heart condition complicated by syphilis for which he had been receiving clinical treatments. This heart condition caused his death.

The plaintiff in a suit on the policies insisted that the agent who solicited the insurance had knowledge of this condition which was imputable to the company and that the issuance of the policy constituted a waiver of the condition in the policy concerning sound health. The Court of Appeals held that the question whether or not the agent knew of the insured's heart condition was a question for the jury.

Our Tennessee Supreme Court on certiorari held that the doctrine of imputed knowledge does not apply where the one who seeks to charge the principal is acting in collusion with the agent. The Supreme Court found that

the defendant company had no knowledge of the insured's heart condition; refused to impute the knowledge, if any, to the principal and rendered judgment for the defendant company.

By way of conclusion we observe that admittedly the defendant company would not have issued a policy on Mr. Templeton if it had known that he had been regularly treated for cancer of the chest over a period of several months. Also we observe that the insured as a lawyer with many years experience must have known that he was not eligible for life insurance because of the cancer of the chest and that it was only by falsely stating that he was in good health and in withholding any mention of cancer or X-ray treatments to the company that he could hope to get the life insurance policy.

Under the law both of the State of Texas and the State of Tennessee it would be inequitable and unjust to allow a recovery of the proceeds of the policy in this cause. Therefore, the decree of the Chancellor rescinding the contract and dismissing the defendant's cross-bill is in all things affirmed at the cost of the appellant.

Avery P. J. (W. S.) and Bejach, J., concur.